[No. 7,520.—Department One.]

## THOMAS MORAN v. DANIEL ABBEY ET AL.

DEMURRER—WAIVER—PRESUMPTION.—Where the defendants, after a demurrer to the complaint—which does not appear from the record to have been disposed of—answer to the merits, the presumption is that the demurrer has been waived or overruled.

PROMISSORY NOTE—PAYMENT—EVIDENCE.—A. and H. made their promissory note—of date December 20th, 1875—payable to the order of the payee

one year after date at the banking house of R. S. & Co. After the maturity of the note—upon the suggestion of A. that the note was bearing good interest, and that the plaintiff should take it out of bank and hold it for himself—the plaintiff, without suing the owner of the note or having any negotiations with him, went to the bank where the note had been left for collection, paid to the agent the amount, and recovered from him the note unindorsed; but more than two years afterwards, upon being advised by his lawyer that an indorsement was necessary, procured the indorsement of the payee "without recourse," and brought this action. Upon the trial—the plaintiff being on the stand—the defendant offered to show by the witness, "that, through a large course of dealings between M., the plaintiff, and A., M., without having consulted with H. (the payee), takes A.'s money to the bank and pays the note; and that he held at that time all the property of A. in his hand, and that the payment on that occasion, though nominally made by M., was in fact made by A., growing out of the nature of the transactions of the parties;" and the offer was rejected on the ground that the evidence was irrelevant and immaterial.

*Held:* The circumstances offered to be proved, in connection with the circumstances attending the transaction with the bank, would have tended to prove payment of the note by the plaintiff for A., and at his request, and the court erred in rejecting the evidence.

EVIDENCE—RELEVANT—DEFINITION.—The meaning of the word relevant, as applied to testimony, is that it directly touches upon the issue which the parties have made by their pleadings, so as to assist in getting at the truth of it.

APPEAL from a judgment for the plaintiff, and an order denying a new trial, in the Superior Court of Butte County. HUNDLEY, J.

*Burt & Hamilton,* for Appellant.

*Gray & Gale,* for Respondent.

McKEE, J.:

Action upon a promissory note. On December 30th, 1875, Daniel Abbey and Phillip Heffner made and delivered to George Hancock their joint and several promissory note for the sum of nine hundred dollars, payable one year after date to the order of George Hancock, at the banking house of Rideout, Smith & Co., in Oroville, with interest thereon at the rate of one and a half per cent. per month from date until paid. The note was left in the banking house of Rideout, Smith & Co. for collection.

In November, 1879, the payee indorsed it "without re-

course," and immediately thereafter, the plaintiff commenced this action upon it. To the complaint in the action the defendants filed a demurrer, which does not appear by the record before us to have been disposed of, but the presumption is that it was waived by the defendants, or overruled by the Court, as the defendants, after demurring, answered separately to the merits—Abbey pleading payment by a discharge in bankruptcy, and Heffner the general denial and payment. Upon these issues the case was tried by the Court with a jury. Plaintiff had verdict and judgment against Heffner alone for one thousand seven hundred and thirty-eight dollars and forty-two cents, from which, and the order denying his motion for a new trial, he appeals.

In the course of the trial of the case, after the plaintiff had testified to the circumstances of getting the note from the bank, and of its subsequent indorsement by the payee, counsel for the defendant, in cross-examination of the plaintiff, asked him the following question, viz.: "Now, during these years, from 1875 up to this time, have you been holding all Abbey's property? What property has Abbey owned that you did not hold?" This was objected to on the ground that it was irrelevant and immaterial. Upon which counsel for defendant rose and made the following offer: "We offer to show that through a large course of dealings between Moran and Abbey, Moran, without having consulted with Hancock, takes Abbey's money to the bank and pays the note; and that he held at that time all of the property of Abbey in his hands, and that the payment on that occasion, though nominally made by Moran, was, in fact, made by Abbey, growing out of the nature of the transactions of the parties." The same objection was made to the offer, and the Court sustained the objection, to which the defendants excepted, and the same is assigned as error.

The fact in the issue made by the defendant Heffner, was payment. That fact was provable not only by the circumstances attending the taking up of the note from the bank, but by those of the relation existing between Abbey and the plaintiff, and their course of dealing with each other in their business and with reference to the property of Abbey.

It appeared by the testimony of the plaintiff in his exam-

ination in chief, that he had got possession of the note in 1877, under very suspicious circumstances. As a money-lender he was intimately acquainted with all of Abbey's business affairs; he knew that the note had been given by Abbey to secure payment of money borrowed by him, and that Heffner was, in fact, only the surety of Abbey, although he had signed the note with him as a principal. He also knew that, before the maturity of the note, Abbey had become insolvent, and had been declared and adjudged a bankrupt, by the judgment of the United States District Court for the District of California; and he had a " crop mortgage upon all of Abbey's crops." It was under those circumstances that Abbey, one day, informed the plaintiff he had heard that Heffner was trying to borrow money to take up the note in question, and suggested to him " if he had the money he could take the note out of the bank and hold it himself, as it was drawing good interest." Solely upon that suggestion, the plaintiff, without seeing the owner of the note, or having any negotiations with him or any one else, for purchasing it, went to the bank, where the note had been left for collection, told the managing agent of the bank to figure up the principal and interest due upon it, and when the amount was ascertained, he counted it out on the counter. The agent took the money and passed the note unindorsed to the plaintiff, who made no request for a transfer of the note by indorsement or otherwise. But he took it and " put it away in his safe among the balance of his papers," where it lay for over two years, when he took it out to bring suit upon it. On taking it to his lawyer, he was advised that it ought to be indorsed by the payee. For that purpose he took the note to Hancock, to whom it had been given, who, after many objections and much reluctance, finally consented to indorse it " without recourse."

And not only did the plaintiff obtain possession and indorsement of the note under suspicious circumstances, but his testimony as to the nature of the transaction itself was equivocal, as is apparent from his answers to the following questions, asked him by his own counsel:

" Q. Did you pay the note at the request of Abbey ?

" A. I paid it at the request of Mr. Abbey.

" Q. Did you pay it or buy the note ?

" A. I bought it out of the bank.

" Q. Did you satisfy or buy the note ?

" A. I bought the note right out of the bank."

But from whom did he buy ?  Not from the owner or any one authorized to sell; not even from the agent of the bank. In his examination in chief he declared: " I took the note up at Abbey's request, without seeing the owner or making any trade with him at all.  I knew Hancock, to whom the note was given.  I never spoke to him about buying the note. * * * I never had a conversation with him about it until I was going to commence suit upon it."

After such evidence from the plaintiff, the defendant, certainly, had the right, in cross-examination of the plaintiff, to show that, before and after the bankruptcy of Abbey, and at the time of the transaction with the bank, by which the plaintiff got possession of the note, the plaintiff had the charge and control of all the property of Abbey, and that, by the course of dealings between them, he had held and used the property by the sanction of Abbey, as security or otherwise, for his assumption of payment, or payment of Abbey's debts or bills.  These circumstances, in connection with the circumstances attending the transaction with the bank, would have tended to establish the truth of the fact, which was already rendered probable by the testimony of the plaintiff in his examination in chief, viz.: payment of the note by the plaintiff for Abbey, and at his request.  If the note was then paid it could not have been revived two years afterwards by indorsement.  A transaction which amounts to payment of a note can not be transformed into a transfer of it by a subsequent indorsement.  Such an attempt would be a fraud upon the makers of a note, and as defendants to an action upon it they should be allowed great latitude in proving their defense.  When, therefore, the plaintiff in testifying as a witness, admitted that he received the note in controversy after maturity, and under circumstances of suspicion, great latitude should have been allowed the defendant in cross-examining him as to all the circumstances or collateral facts which were capable at all of affording any reasonable presumption or inference of the fact of payment.  If the facts

offered tended in any way to constitute a link in the chain of proof which the plaintiff himself had forged, they were admissible, although alone they might not have been persuasive of the truth of the fact in issue. But, even alone, and as affirmative evidence by the defendant, we think they were relevant, because they tended to prove the issue. The meaning of the word relevant, says the Supreme Court of New York, as applied to testimony, is that it directly touches upon the issue which the parties have made by their pleadings, so as to assist in getting at the truth of it. It comes from the French *reliever*, which means to assist. Whatever testimony was offered which would assist in knowing which party spoke the truth of the issue, was relevant, and when to admit it did not override other formal rules of evidence, it ought to have been taken. (*Platner* v. *Platner*, 78 N. Y. 95.)

Judgment and order reversed, and cause remanded for a new trial.

Ross, J., and McKinstry, J., concurred.