[Department One. — January 16, 1883.]

## THOMAS MORAN, RESPONDENT, *v.* DANIEL ABBEY ET AL., PHILLIP HEFFNER, APPELLANT.

NEW TRIAL — NEWLY DISCOVERED EVIDENCE. — A new trial will not be granted on the ground of newly discovered evidence, if the evidence might have been produced at the trial by the exercise of reasonable diligence. This rule held to be applicable to evidence of a conversation between the plaintiff and one of the defendants previous to the trial, the plaintiff being the moving party, and giving as the reason for not producing the evidence that he had forgotten the conversation.

WITNESS — EXAMINATION — LEADING QUESTIONS — JUDICIAL DISCRETION. — On the direct examination of a witness, leading questions may be allowed by the court in the exercise of a sound discretion, and the action of the court in that respect can only be reviewed so far as to determine whether its discretion has been abused. No abuse of discretion appearing a new trial cannot be granted on the ground that the court erred in allowing such questions.

ID. — PARTY TESTIFYING ON HIS OWN BEHALF — CROSS-EXAMINATION. — The plaintiff was examined as a witness on his own behalf, and testified fully in relation to the matters in controversy. On cross-examination, he was asked as to certain statements claimed to have been made by him as a witness in another case. This was objected to on the ground that the record in the case had not been produced. The court overruled the objection. *Held,* that the production of the record was unnecessary, and that the objection was properly overruled.

JUDICIAL DETERMINATION — HOW PROVED — STRIKING OUT ANSWER OF WITNESS. — A judicial determination, being a matter of record, must be proved by the record itself, and it is not error to strike out the oral statement of a witness as to what the determination was.

IMMATERIAL ERROR NO GROUND FOR A NEW TRIAL. — Where the answer of a witness to a question asked is improper, but no harm could have resulted from it, a refusal by the court to strike the answer out is an immaterial error, and no ground for a new trial.

PROMISSORY NOTE — PAYMENT. — The payment of a promissory note by a third person at the request of the maker to an agent holding it for collection extinguishes the note, and cannot afterwards be treated as a purchase. The obligation to pay being discharged, a subsequent transfer of the note by the payee to the person making the payment will not revive it.

VERDICT — SUFFICIENCY OF THE EVIDENCE — CHARGE TO THE JURY. — The case was tried by a jury, and the verdict being against the plaintiff, he moved for a new trial, which was granted. In support of the motion, he relied partly upon insufficiency in the evidence, and errors claimed to have been committed by the court in its charge to the jury. After reviewing the evidence and examining the charge in connection with the pleadings and circumstances of the case, *held,* that the verdict was in accordance with the evidence, and that there was no substantial error in the charge.

APPEAL from an order of Superior Court of the county of Butte granting a new trial.

The action was brought on a promissory note given by the defendants, Abbey and Heffner, to one Hancock. The contro-

versy at the trial was between the plaintiff and Heffner, Abbey having been discharged in bankruptcy. The additional facts are stated in the opinion of the court.

*J. M. Burt, Jo. Hamilton,* and *John W. Turner,* for Appellant.

*Gray & Gale,* for Respondent.

McKEE, J. — This case has been before the court on a former appeal. (58 Cal. 165.) Upon the going down of the remittitur from the decision then rendered, a re-trial was had in the lower court which resulted in a verdict for the defendant, Heffner; but upon a motion for a new trial made by the plaintiff, upon a statement of the case and two affidavits of newly discovered evidence, the court set aside the verdict. Whether that was done upon the grounds of newly discovered evidence, or of any of the specifications of error contained in the statement does not appear by the record.

But the newly discovered evidence related to an alleged conversation between the plaintiff and Heffner about the promissory note upon which the action was brought; and the affidavits concerning it were made by the plaintiff himself and one Wilson, both of whom had testified as witnesses in the case. In his affidavit the plaintiff deposes to "absolute forgetfulness" of the conversation, until it had been recalled to his memory by Wilson after the rendition of the verdict. Wilson, however, had not forgotton it, and could have testified to it at the trial, if he had been questioned at all about the subject; but he was not. Yet, as the evidence was obtainable by the exercise of ordinary diligence, the neglect or omission of the plaintiff to draw it from the witness by a proper course of examination, is no ground for a new trial. It is well settled that a new trial will not be granted because new evidence has been found which was known to a witness at the trial of the case, and might have been obtained from him by due attention. (*Bond* v. *Cutler,* 7 Mass. 205; *McIntire* v. *Young,* 6 Blackf. 496.)

The issues in the case which were submitted to the jury comprised "payment and satisfaction" of the note in suit, and fraud in obtaining a qualified indorsement of the note from the payee after it had been paid; and it is urged that the verdict of

the jury was properly set aside, because of errors committed by the court during the trial of the cause in overruling objections to questions propounded to witnesses, in admitting and excluding testimony, and in giving instructions to the jury.

Four or five specifications of error relate to rulings made by the court in denying objections by counsel for plaintiff to leading questions asked by counsel for Heffner, in the direct examination of his witnesses. But these are not errors for which a new trial will be granted. We are not aware of any case in which a verdict has been set aside for the reason that leading questions, although objected to, have been allowed to be put to a witness. (*Green* v. *Gould*, 9 Allen, 466; *Hopkinson* v. *Steel*, 12 Vt. 582; *Parsons* v. *Huff*, 38 Me. 187; *Mershoi* v. *Hobensack*, 22 N. J. 372.) And the reason is that the examination of a witness in the trial of a case is a matter within the sound discretion of the trial court, who may, in the exercise of that judicial discretion, allow or disallow leading questions. (§§ 2044–2046, Code Civ. Proc.) A matter resting in judicial discretion is not reviewable in an appellate court; it is only the abuse of such a discretion of which we will take cognizance. In this case no such question is presented by the record.

It has been also urged that the court erred in permitting the defendant, against the objections of plaintiff's counsel, to cross-examine the plaintiff upon matters of record, without producing the record itself. But the objections made were not tenable because the cross-examination related to the testimony which, it was claimed, the plaintiff had given while under examination in a court of record, and not to any record of the court. The cross-examination had developed the fact that Abbey, the principal maker of the note in suit, had been adjudicated a bankrupt before the maturity of the note; that the plaintiff had become possessed of all the available property of the bankrupt before the act of bankruptcy; and that he had been cited to appear in the Bankruptcy Court to answer under oath what property or effects of the bankrupt he had in his possession or under his control; and the object of the cross-examination objected to evidently was to show that the plaintiff had, while under examination in the Bankruptcy Court, produced or presented the promissory note in suit to that court, and testified that he had paid

it for Abbey at his request.   As sworn statements or admissions
of the plaintiff relevant to the issues of payment and fraud,
which were on trial, the evidence was proper, and the examina-
tion of the plaintiff for that purpose was unobjectionable.

Nor was it error for the court to strike out the oral statement
of the plaintiff in response to his counsel as to the determina-
tion by the Bankruptcy Court of the contest between him and
the creditors of Abbey.   Whatever judgment or order had been
made by the court, as the result of the plaintiff's examination,
in awarding to the plaintiff the property involved in that con-
test, was a matter of record provable only by a production of
the record itself.

The next exception which is the subject of a specification of
error relates to the refusal of the court to strike out the answer
of a witness to a question which had been put to him.   The
witness had given testimony tending to prove that Abbey, the
maker of the note, and the plaintiff came together to the bank,
where the note had been left for collection, to take up the note,
and that the witness, after receiving from the plaintiff the
money due upon the note, surrendered it.   Upon being asked
" To whom?" he answered: " I supposed I was surrendering it
to Abbey."   It was that answer which the court, upon motion
of the plaintiff, refused to strike out.

The ruling, if error, was not a substantial one.   The fact in
question was the identity of the person to whom the note was sur-
rendered after the money for it had been paid.   All the facts and
circumstances attending the entire transaction had been given in
detail by the witness; and after his answer as to the surrender of
the note he testified that he received the money, laid the note upon
the counter for the party to take possession of it, and his impres-
sion was that the plaintiff took it up from the counter, and he
and Abbey then went away.   This left the question upon the
circumstances connected with it, for the jury, whose duty it was
to draw the proper inferences from them, and the plaintiff had
the full benefit of the proof.   So that if there was any error in
the refusal to strike out the answer it was harmless, and would
not justify directing a new trial.

This brings us to a consideration of the grounds of litigation
in the case as it was submitted to the jury under the instructions

of the court.  As has been already stated, the principal subject
of controversy was, whether the transaction by which the plaint-
iff obtained possession of the note in suit amounted to a pur-
chase or payment of the note.  The note was given on the 30th
of December, 1875, payable one year after date, to the order of
George Hancock, at the banking house of Rideout, Smith & Co.,
in Oroville, and was left by the owner in the bank for collec-
tion.  Before it matured, Abbey, the principal maker of the
note, had turned over by sale or otherwise, all his available
property to the plaintiff; this property comprised one hundred
and sixty acres of land, upon which Abbey resided with his
family; one thousand six hundred head of sheep, including sev-
eral hundred head which belonged to his wife; seventy-five
hogs, and "ten, fifteen, twenty or thirty tons of hay"; and on
October 24, 1876, Abbey became a voluntary or involuntary
bankrupt.  But his creditors had attached the property which
had been turned over to the plaintiff, and between them and
him a contest arose, in which he was cited to appear in the
Bankruptcy Court for examination, under oath, touching the
property or effects of Abbey, which he had in his possession or
under his control.  Before he appeared in obedience to the cita-
tion he obtained possession of the note in suit.  In getting it
he knew all about the note, the parties to it, and the legal rela-
tions existing between them.  He himself testified that he knew
— and it was admitted at the trial of the case — that the note
had been given to secure payment of a sum of money which
Abbey had borrowed for his exclusive use and benefit; that
Heffner signed it as a joint maker for the accommodation of
Abbey, and that, as between Hancock, the payee of the note,
and Abbey, Heffner was a surety only.  Knowing these things,
and having acquired from Abbey possession of the property
about which he was engaged in a contest with the creditors of
Abbey, the plaintiff before appearing in the contest entered into
a transaction with Abbey about the note, which is best shown
by his own testimony:  "A few days before the transaction
Abbey spoke to me about taking up the note.  He told me
there was a note in the bank made by him, and that he was try-
ing to raise money but had failed, and asked me if I had any
money to loan.  I told him I had.  He says he would like to

get that note out of the bank before any costs would be put on him. . . . . I took up the note at his request. I knew Hancock, the payee of the note. I did not go to see him about purchasing it. . . . . I went to the bank without seeing Hancock, the owner of the note, at all, and took the note out of the bank. . . . . I paid the note, took possession of it, took it home, put it into my safe, and let it lay there three years, until, before commencing this suit, I went upon the advice of my lawyers, and got Hancock to indorse it. At first Hancock refused to indorse, because he had got his money, but afterwards, on being assured that a qualified indorsement would not injure him, he consented."

From this testimony alone it is evident that in the transaction there was no concurrence or privity on the part of the payee of the note and the plaintiff. Both were, as to the transaction, strangers to each other. There was therefore no sale of the note, and no obligation on the part of the payee, arising out of the transaction, which entitled the plaintiff to a transfer. As a friend of Abbey and at his request, the plaintiff advanced the money to take up the note. He and Abbey were therefore the only parties to that transaction. The legal effect of the transaction was to extinguish the obligation of the note; and the only obligation which arose from the transaction was on the part of Abbey.

It has been argued, however, that "if there was no contract of sale by reason of a want of mutual consent between the plaintiff and the payee of the note, then, for the same reason and under the same rule of law, there was no payment; and that it follows as a necessary conclusion that the note, being neither paid nor purchased, still existed, and belonged to Hancock until he indorsed it to the plaintiff."

But payment of a promissory note is not a contract; it is performance of the obligation arising out of the promise to pay. Any one of the several parties to a joint contract, or any one in his behalf and at his request, or with his consent, may perform the obligation; and when performance has been offered or made, and the money accepted, the obligation becomes extinguished. The parties to the contract are no longer bound to each other by the *vinculum legis* of right and duty. The duty being discharged

the right ceases to exist; and the contract itself, though pre-
served in form, is no longer the subject of sale or transfer.
When therefore the plaintiff, at the request of Abbey and for
his benefit, took up the note, the contract was discharged, and
the qualified indorsement of it by the payee, three years after-
wards, was ineffectual as a transfer. The verdict of the jury
was therefore according to the evidence and the law.

In the charge of the court to the jury we find no substantial
error. Considered as a whole, in connection with the evidence
and the pleadings, and construed with reference to the subject-
matters in controversy, and the claims of parties before the
court, it was substantially correct. It fairly presented the case
to the jury, and there was nothing in it calculated to mislead
the jury. There were therefore no grounds for a new trial.

Order reversed.

McKINSTRY, J., and Ross, J., concurred.