JOHN H. LYNDS v. TREMAIN R. VAN VALKENBURGH
*et al.*

No. 14,931.    (93 Pac. 615.)

SYLLABUS BY THE COURT.

1. NEGOTIABLE INSTRUMENTS — *Failure of Consideration—Innocent Purchaser.* The consideration for certain promissory notes secured by a mortgage on land in Kansas was that the payee should assume the payment of certain notes secured by real-estate mortgages on land in Nebraska which was conveyed to the payee. The payee sold and indorsed the Kansas notes to a third person, who brought suit upon them. The maker pleaded a failure of consideration, in that the payee had not paid the Nebraska notes and discharged the Nebraska mortgages. The court found that the indorsee was not an innocent purchaser and knew at the time he took the Kansas notes the maker claimed a defense to them on account of the failure of consideration described. It made no finding that at the time of the indorsement the information of the indorsee extended to any defense of failure of consideration upon any other ground. *Held,* the contract, the pleading and the finding all forbid that judgment in favor of the indorsee should be denied for a failure of consideration in respect to any matter other than the one stated.

2. —————— *Burden of Proving Failure of Consideration.* In the suit referred to the plaintiff was not required to prove that he or the payee of the Kansas notes paid any of the Nebraska notes or discharged any of the Nebraska mortgages. The burden of proving the failure of consideration pleaded rested upon the defendant.

3. —————— *Payment — Burden of Proving Subsisting Liability.* The court found that the Nebraska notes had been paid but that the evidence did not disclose by whom the payment had

Lynds v. Van Valkenburgh.

been made. *Held*, the plaintiff was entitled to judgment on the findings.. The word "paid" means, *prima facie*, that the obligations have been satisfied and the demands extinguished; and if the obligors on the Nebraska paper still rest under liability upon it the defendant should have established the fact.

4. ———— *Possession of Canceled Instruments.* The court concluded as a matter of law that the plaintiff would be entitled to judgment provided he produced in court and delivered to the defendant the Nebraska notes paid and the. Nebraska mortgages canceled. *Held*, error. The contract of assumption did not require a delivery of the Nebraska paper paid and canceled to the defendant, and whoever paid the notes and satisfied the mortgages was entitled to the possession of them.

5. ———— *Payment — Evidence.* Following the return of the finding of fact and conclusion of law referred to the plaintiff undertook to account for the Nebraska notes and mortgages. He produced and tendered one note canceled and the mortgage securing it released of record. One note and the mortgage securing it had been destroyed. Another note. and the mortgage securing it had been delivered to a grantee of the land affected, who desired to retain it. The remaining note and the mortgage securing it had been canceled in a foreclosure suit based upon them, and had been filed with the papers in the case by the clerk of the court, but the note was missing. All the notes not produced had been paid under circumstances indicating an extinguishment of liability upon them, ·and the mortgages securing them had been released. There was no evidence of circumstances indicating that any right of equitable assignment or of subrogation existed or might arise. *Held*, the plaintiff was entitled to judgment.

Error from Atchison district court; BENJAMIN F. HUDSON, judge. Opinion filed January 11, 1908. Reversed.

STATEMENT.

THE plaintiff sued to recover judgment upon three promissory notes of $1000 each and to foreclose a mortgage securing them. The notes were executed by defendant Tremain R. Van Valkenburgh to J. K. Carolus, and were indorsed without recourse to the plaintiff. The mortgage covered certain real estate in White

Cloud, Kan., upon which were situated a mill and a grain elevator.

Carolus had been the record owner of the mill property and deeded it free of encumbrance to Van Valkenburgh, receiving in consideration therefor conveyances to himself of several tracts of real estate in Nebraska and a deed to his sister, Margaret Over (who apparently had an interest in the mill), of a tract described as being in Taney county, Missouri.

At the time of the trade the tracts conveyed to Carolus were separately owned by Van Valkenburgh and others associated with him in the purchase of the mill, who afterward incorporated as the White Cloud Milling and Elevator Company, the various individuals taking stock in proportion to the value of the land each had contributed. Van Valkenburgh then deeded the mill property to the corporation.

Four tracts of the Nebraska land were covered by mortgages. In the preliminary contract it was provided that if it were possible the Van Valkenburgh party would, before the exchange of deeds, pay off these mortgages so that the trade would stand: clear mill for clear land; but, if it were not possible for them to do so, they would pay the encumbrances down to $3000, Carolus would assume $3000 of the mortgage indebtedness, and Van Valkenburgh would give Carolus a mortgage back on the mill property for that amount.

January 1, 1894, was fixed as the date for closing the trade, but by agreement the time was extended to January 15 following. The extension agreement also provided that if the title to the tract of land in Taney county, Missouri, which was afterward deeded to Margaret Over, were not satisfactory to Carolus he should be given Nebraska land instead at any time within six months after January 15. On January 15, or soon after, deeds were exchanged, and, nothing having been paid on the Nebraska mortgages, the notes and the mortgages sued upon were given to Carolus. The deeds to Carolus of the Nebraska lands did not provide that

he should assume or pay the mortgages or any part of the mortgages upon them.

The contract originally provided that two tracts of land in Taney county, Missouri, should be conveyed to Carolus. For one of them Nebraska land was by agreement substituted, upon which there was a mortgage, which Carolus afterward paid.

The title to the Margaret Over tract proving unsatisfactory, a Nebraska tree claim was substituted for it, valued at $3000. The Missouri land was valued at $2000. The agreement was that Van Valkenburgh should convey the tree claim to Carolus on the consideration that the Missouri land should be quitclaimed by Margaret Over to Van Valkenburgh and that Van Valkenburgh should be credited $1000 on the notes secured by mortgage on the mill. It was understood by all parties that the tree claim was owned by Sarah E. Johnson, a sister of Van Valkenburgh, and that she had not proved up so as to be entitled to a patent. After final proof was made Van Valkenburgh tendered to Carolus a deed of the tree claim, executed by Sarah E. Johnson and her husband, and demanded the quitclaim deed from Margaret Over and credit of $1000 on his notes. The tender was refused and compliance with the demand was refused. Sometime previous to the tender Carolus had requested that the deed when executed should run to his wife. Sarah E. Johnson and her husband executed a new deed to Mrs. Carolus, which Van Valkenburgh tendered, coupled with the same demands as before and with the same result as before.

The plaintiff's suit was brought after the last note had matured. Various parties were made defendants and numerous issues were framed. For present purposes, however, it is only necessary to refer to some of them.

The answer of Tremain R. Van Valkenburgh admitted the execution and delivery of the notes and mortgage but denied liability upon them. He pleaded the

facts relating to the Margaret Over and Sarah E. Johnson lands, made a tender of the Johnson deeds to Carolus and Mrs. Carolus, demanded a quitclaim deed from Margaret Over, and asserted that the first note was paid. He then pleaded that the notes sued on were given upon the consideration that Carolus should assume and pay the four mortgages upon the Nebraska land, that such mortgages had not been paid, whereby the consideration for the notes had to that extent failed, and that the plaintiff purchased the notes with knowledge of the facts. Lastly he pleaded an offset arising upon a running account and some independent transactions. The failure of Carolus to procure the quitclaim deed from Margaret Over was not counted upon as affecting in any way the consideration of the second and third notes. The plaintiff replied, and the case was sent for trial to a referee.

At the trial Van Valkenburgh tendered the two Sarah E. Johnson deeds to Carolus unconditionally, offering him his choice of them, and deposited them with the referee. The tender was refused at the time, but after the trial Carolus accepted one of the deeds.

The referee found in detail the facts of which the foregoing furnishes little more than an outline. He further found that the plaintiff had purchased the first note after it became due and that he held it subject to all defenses; that the plaintiff knew the second and third notes were given in a transaction which resulted in the conveyance of the mill property to Van Valkenburgh, but that the plaintiff did not know Van Valkenburgh or his associates claimed any defense to the notes or mortgages on account of the failure of Carolus to pay off the mortgages on the Nebraska land; and that the evidence failed to show whether the Nebraska notes were then due.

An account between the parties was stated. From the facts found the referee concluded Van Valkenburgh was entitled to a credit of $1000 on the first note, which paid it except $35 accrued interest; that the plaintiff

Lynds v. Van Valkenburgh.

was entitled to recover the balance due upon the first note; that he was entitled to the rights of an innocent purchaser of the second and third notes, and should recover both the principal and interest of them; and that, after balancing the open accounts between the parties, Van Valkenburgh was entitled to a credit in reduction of the plaintiff's claim of a stated sum. The referee's report was approved, and judgment was entered accordingly and for foreclosure of the mortgage.

On the trial the referee held a witness to be incompetent to testify whose testimony, if admitted, would have tended to prove notice to the plaintiff of the claimed defense of failure of consideration. Proceedings in error were instituted in this court by the defendants to review the judgment, and for the single reason that the referee erred in rejecting the testimony referred to the judgment was reversed and the cause was remanded for further proceedings. (*Van Valkenburgh v. Lynds,* 63 Kan. 887, 66 Pac. 994.)

When the controversy was resumed in the district court a motion on behalf of the defendants attacking the referee's findings of fact and conclusions of law was denied, except that the finding relating to the plaintiff's want of notice and the conclusion of law based thereon were set aside. Van Valkenburgh amended his answer in a particular not now material, the plaintiff amended his reply in many respects, and the issues left undetermined by the former proceeding and the new issues raised by the amended reply were then tried by the court. At the conclusion of the trial the court made additional findings of fact and conclusions of law, which read, in part, as follow:

## "FINDINGS OF FACT.

"At the time of the purchase of said notes and said mortgage by the plaintiff he knew that they were given in the transaction which resulted in the conveyance of the mill and elevator property to Tremain R. Van Valkenburgh, and also knew that Tremain R. Van Valkenburgh and his associates claimed defenses to the

notes and mortgages on account of the failure of said J. K. Carolus to pay the several notes secured by the mortgages on the Holt county, Nebraska, lands.

"At the time he purchased them the plaintiff knew that the only consideration for the notes sued on herein was the promise of J. K. Carolus to pay the certain notes, and to have released of record the mortgages securing the same, which had theretofore been made and executed by said Tremain R. Van Valkenburgh and others on said lands in Holt county, Nebraska, and which are all due.

"While it appears from the evidence in this case that said mortgage indebtedness has been paid since the trial of this case before the referee, it does not appear who paid such indebtedness or in whose possession the notes are now."

### "CONCLUSIONS OF LAW.

"(1) The plaintiff is not entitled to the rights of an innocent purchaser of the notes and mortgage sued on herein, and said defendants, T. R. Van Valkenburgh and Henrietta Van Valkenburgh and the White Cloud Milling and Elevator Company, are entitled to set up and maintain any defense to said notes and mortgage in the hands of the plaintiff which they could set up and maintain against J. K. Carolus, the original payee of said notes and mortgage."

"(3) The plaintiff will be entitled to judgment upon the notes sued on herein, but without costs, in whatever sum he may be equitably entitled to, the amount to be determined hereafter, said judgment to be a first lien on all the property mentioned and described in his said mortgage, if he shall within a reasonable time from this date produce, or cause to be produced, the several notes which the said J. K. Carolus assumed and agreed to pay and which were secured by mortgages on said lands in Holt county, Nebraska, and deliver said notes, paid and canceled, and said mortgages, properly satisfied of record in said Holt county, Nebraska, to said T. R. Van Valkenburgh, and also shall deliver to said T. R. Van Valkenburgh a properly executed quitclaim deed from said Margaret Over, or any one claiming under her, to section six (6), township twenty-one (21), range nineteen (19), Taney county, Missouri, as described in finding of fact No. 4 of the report of the referee filed herein; otherwise, judgment

will be entered in favor of said defendants, T. R. Van Valkenburgh and Henrietta Van Valkenburgh.

"Final judgment herein will be reserved until the further order of this court."

The cause was continued from time to time to allow the plaintiff opportunity to meet the conditions upon which judgment would be rendered in his favor. Finally, being unable to do this, he so announced to the court, but asked and was granted leave to make a showing.

The plaintiff thereupon produced and tendered a coupon note of Levi Van Valkenburgh for $550, payable to George S. Lewis, with indorsements of interest and the principal paid, the mortgage securing the note on one of the tracts of Nebraska land, and an acknowledged release of the mortgage by the mortgagee. The note and mortgage correspond in all respects to the description in the third amended answer of one of the encumbrances which Carolus assumed. The record discloses no objections made to the identity of the paper or to the sufficiency of the release. The remainder of the showing was by deposition, and accounted for the other notes and mortgages as follows:

One tract of land was sold by the plaintiff to W. F. Conrad about the year 1901. The sum of $500 due upon a mortgage given by Van Valkenburgh was then unpaid. Conrad paid the balance due and received the note and mortgage canceled and marked "paid." Afterward he sold the land, and, the note and mortgage not being called for, he burned them with other papers. A release of the mortgage was obtained at the time the note was paid and was recorded. A certified copy of the recorded release, identified by the recorder of the county, is attached to the deposition.

M. F. Harrington bought the mortgage upon another tract, known as the "Swain land," and the note secured, and obtained possession of them. He then purchased the land itself, and secured a release of the mortgage from a receiver who had been appointed for

the mortgagee.   He then sold the land to William Hart clear of encumbrances, and delivered the note and mortgage to Hart as fully satisfied and paid.   The release from the mortgagee was procured to evidence the fact that the mortgage was canceled and satisfied.   Hart has the note and mortgage in his possession and under the advice of his attorney desires to keep them.   A certified copy of the recorded release is attached to the deposition.

A suit was brought to foreclose the mortgage given by Van Valkenburgh to Celim H. Seymore upon the remaining tract.   The land was owned at the time of suit by S. H. Greenwalt.   A decree of foreclosure was entered, and then a deed was given by Greenwalt to Seymore in satisfaction of the plaintiff's claim.   The attorney for the plaintiff had possession of the note and mortgage during the proceedings and surrendered them to the clerk of the court for cancelation.   The clerk placed his cancelation stamp upon them and they remained in the files for some time.   The canceled note is now missing from the clerk's office.

In addition to the foregoing, the depositions show that after the note and mortgage last referred to were canceled by the clerk of the court Levi Van Valkenburgh, one of the incorporators of the White Cloud Milling and Elevator Company, the grantor of one of the tracts of the Nebraska land to Carolus and the maker of the Lewis mortgage which Carolus assumed, had a conversation with the attorney for the plaintiff in the foreclosure suit, in which he inquired if it would be possible for any one to obtain the canceled note and mortgage and remove them from the official files.   He further said he was interested in an action pending in Kansas in which John H. Lynds was plaintiff and Tremain R. Van Valkenburgh and others were defendants; that it would be absolutely necessary for Lynds to produce the original papers in court to obtain relief, and that if Lynds were unable to produce the original note

they, the Van Valkenburghs, would be $800 ahead in the Kansas suit.

William Hart testified that Levi Van Valkenburgh called upon him and told him that if Carolus obtained the note and mortgage pertaining to his land they would take the land away from him and make him pay back the amount he had paid for it.

W. F. Conrad testified that Levi Van Valkenburgh interviewed him and stated to him that Lynds needed the note which he had burned and probably would write to him about it.

None of the testimony given by deposition was contradicted or impeached and no counter showing was made to impair its force. The defendants merely introduced the record of the proceedings in an action wherein Margaret Over obtained a judgment against Van Valkenburgh on account of a breach of the warranty contained in the deed to her of the Taney county, Missouri, land.

The court made no additional findings of fact, but drew a conclusion of law adverse to the plaintiff and rendered judgment in favor of the defendants.

The plaintiff prosecutes error.

*S. M. Brewster, W. W. Guthrie,* and *W. F. Guthrie,* for plaintiff in error.

*W. D. Webb,* for defendants in error.

The opinion of the court was delivered by

BURCH, J.: Many assignments of error are made and argued. Much testimony is quoted by both parties in support of their respective positions upon which neither the referee nor the court made findings. This court can consider the written instruments executed by the parties, other written documents, the pleadings, admissions and stipulations, and findings of fact. It can also consider the evidence upon any branch of the case which is all in depositions, as that procured by

the plaintiff to explain his inability to produce the notes and mortgages which Carolus had assumed. But it cannot found its judgment upon oral testimony not reduced to findings of fact by the trial court. If the parties desired findings in respect to the matters covered by such testimony a request for further findings should have been made. (*Shuler v. Lashhorn,* 67 Kan. 694, 74 Pac. 264.) Therefore many matters debated in the briefs are not open to consideration. Of those properly reviewable only two need be discussed to dispose of the controversy.

The obligation placed upon the plaintiff to procure a quitclaim deed from Margaret Over before he could have judgment on the second and third notes was wholly unwarranted. The contracts between the parties did not include the subject of the substitution of the tree claim for the Margaret Over tract within the consideration of any of the notes. The answer did not plead the failure of Carolus to deliver a quitclaim deed from Margaret Over as a failure of consideration for the second and third notes, but, on the contrary, pleaded that circumstance in connection with the defense to the first note and then pleaded the omission to pay the Nebraska mortgages as the sole failure of the consideration for the other two notes. There is no finding that any feature of the tree-claim transaction, whereby Carolus became bound to procure a quitclaim deed from Margaret Over, affected any portion of the consideration of the notes, but, on the other hand, the finding quoted at length above is to the effect that the only consideration for the mill-property mortgage was the promise of Carolus to pay the Nebraska notes and have the Nebraska mortgages released of record. The same finding is explicit upon the proposition that the plaintiff's knowledge, when he bought the notes, extended to claimed defenses on account of the failure of Carolus to pay the several notes secured by the Nebraska mortgages. There being no finding that the plaintiff, when he bought the notes, knew of any de-

fense on account of the Over quitclaim-deed matter, this court can imply none; and upon the record as it stands the plaintiff was an innocent purchaser so far as that defense is concerned. Besides all this, in order to secure a credit on the first note for $1000, the difference in price between the tree claim and the Margaret Over tract, Van Valkenburgh waived his right to a quitclaim deed from Margaret Over and tendered the Johnson deeds unconditionally. The credit was allowed, Carolus had accepted one of the Johnson deeds, and that transaction was closed before the district court made its additional findings of fact. The judgment in favor of Margaret Over against Van Valkenburgh had no bearing upon any issue in the case determinable and undetermined at the time it was offered in evidence, and the plaintiff is entitled to judgment without procuring a quitclaim deed from Margaret Over.

The requirement that the plaintiff procure and deliver to Tremain R. Van Valkenburgh the Nebraska notes paid and canceled and the Nebraska mortgages satisfied of record was unwarranted. It may be premised that Carolus assumed the payment of the Nebraska mortgage indebtedness, although the writings into which the preliminary contract merged did not so provide; and it may be taken for granted that a contract to assume a mortgage indebtedness is a contract to pay it. But when Carolus agreed to pay the Nebraska notes and satisfy the Nebraska mortgages he became the principal obligor so far as the individuals of the Van Valkenburgh party were concerned, and upon payment of the notes was himself entitled to possession of the evidences of indebtedness. Any payment or payment through any means which would relieve the parties liable upon the notes of their obligations would satisfy the promise which Carolus gave, and if some grantee of one of the tracts of land should pay the mortgage indebtedness against it he would be entitled to possession of the paper. (*Stiger et al. v.*

*Bent,* 111 Ill. 328.) In any event the contract of Carolus was to pay, not to produce evidence of payment, and the plaintiff could not be defeated because he did not bring into court paper which Carolus was not bound to turn over.

The burden was upon the defendants to prove failure of consideration. Proof by them that they rested under an existing liability upon the Nebraska paper was indispensable to the defense. The plaintiff was not obliged to prove that anybody had paid the Nebraska notes and mortgages. When the court found that those notes and mortgages had been paid, but that there was no evidence to show who paid them, the defendants had not sustained the burden they assumed by their pleadings. They had not shown they were still liable upon the paper, and the plaintiff was entitled to judgment.

It only remains to inquire if the plaintiff aided the defendants' proof in his effort to show what had become of the paid notes and satisfied mortgages. Clearly he did not. The Lewis note and mortgage and a release of that mortgage were produced and tendered in court. In every other instance the nature of the transaction and the conduct of the parties were such as to indicate a positive purpose completely to extinguish both the debt and the lien. Any intention on the part of the holders to assign, and of the persons paying to take, title to the securities is clearly negatived. After clearing his land and then selling it Conrad burned up the canceled notes and mortgages. Harrington is the only person who could claim any right against the defendants because of the payment he made, but he passed the instruments on to his grantee as mere muniments of title. The Seymore note and mortgage were surrendered, canceled and filed for the very purpose of making a public record of the fact that the last spark of vitality in them had been quenched and to prevent them from being used again as live obligations.

If one person, not a mere interloper, but having an

interest in the matter, pay the note and satisfy the mortgage of another the question whether he becomes an assignee of the note and mortgage is one of fact and intention of the parties. (*Binford, Administrator, v. Adams, Administrator, et al.*, 104 Ind. 41, 3 N. E. 753, and authorities cited in the opinion.) If, however, overriding equities so require, one who satisfies an encumbrance upon his land may be subrogated to the rights of the lien-holder, or may be entitled to an equitable assignment of such rights. Subrogation and equitable assignment are acts of the law as distinguished from assignment by acts of parties.

"We must be careful to distinguish between an assignment of the mortgage debt, and a mere right of subrogation to the lien of the mortgage creditor. Assignment is the act of the parties, and depends generally upon intention. Where the nature of the transaction is such as imports a payment of the debt, and a consequent discharge of the mortgage, there can of course be no assignment, for the lien of the mortgage is extinguished by the payment. A mortgage creditor cannot be compelled to assign the debt and mortgage upon receiving payment. All that he can be required to do is to give an acquittance and release.

"The exception to this rule, if it can be so termed, is found in those cases where the party making the payment occupies the position of surety to the debt, or is in some way personally bound for its payment.

"Such a person *may*, in equity, require an assignment or transfer not only of the mortgage itself, but of all the securities held by the creditor, for his protection and indemnity; and although no such assignment or transfer is actually made, a court of equity will treat it as having been done.

"But if the party making the payment does not occupy the position of surety for the debt, as a general rule he cannot claim to be entitled as assignee unless by agreement with the creditor.

"Subrogation is, however, a very different thing from an assignment. It is the act of the law, and the creature of a court of equity, depending not upon contract, but upon the principles of equity and justice. It presupposes an actual payment and satisfaction of the debt secured by the mortgage.

"But although the debt is paid and satisfied, a court of equity will keep alive the lien for the benefit of the party who made the payment, provided he as security for the debt 'has such an interest in the land' as entitles him to the benefit of the security given for its payment." (*Gatewood by, &c. v. Gatewood and Als.,* 75 Va. 407, 410.)

In this case all the evidence is opposed to the idea of an assignment or that liability on the part of the persons primarily bound was preserved. It imports payment of the debt and extinguishment of the lien, and the depositions are barren of any evidence that any occasion exists or may arise for the application of the doctrine of subrogation, or of equitable assignment, in favor of the persons who paid the Nebraska mortgages. In the case of *Crippen v. Chappel,* 35 Kan. 495, 11 Pac. 453, 57 Am. Rep. 187, it was said:

"It always requires something more than the mere payment of the debt in order to entitle the person paying the same to be substituted in the place of the original creditor. It requires an assignment, legal or equitable, from the original creditor, or an agreement or understanding on the part of the party liable to pay the debt, that the person furnishing the money to pay the same shall in effect become the creditor, or the person furnishing the money must furnish the same either because he is liable as surety or liable in some other secondary character, or for the purpose of saving or protecting some right or interest, or supposed right or interest, of his own." (Page 499.)

Here we have the fact of payment by landowners, circumstances indicating that no substituted equitable rights exist, and no circumstances indicating that subrogation, or equitable assignment, may ever need to be invoked. The court cannot speculate upon the subject. It cannot conjure up imaginary states of fact to aid an unproved defense of failure of consideration.

One or two matters urged in the defendants' brief may be noticed. It is said that the referee found there had been a failure of consideration for the notes in suit and that his finding and conclusion upon the sub-

ject were not disturbed. There is no finding by the referee that Carolus agreed to pay the Nebraska notes at once upon the conclusion of the trade or before they fell due. Nor is there any such finding by the court. Oral testimony to that effect is quoted, but for reasons already stated it cannot be considered. The referee found expressly that at the time of the trial before him it did not appear whether the notes were due or not. He further found that the plaintiff took the first note after maturity, and hence subject to the defense of failure of consideration. But he found that, after allowing the credit of $1000, the plaintiff was entitled to recover on the first note the sum of $35, being six months' interest to July 1, 1894, when the credit should have been made. Therefore the referee decided that the defense of failure of consideration had not been established at all. Otherwise he would have allowed no recovery on the first note, which the plaintiff took subject to the defense, if proved.

It is urged that both Lynds and Carolus were witnesses in the case, that both testified, and that neither of them offered evidence to show that either of them had paid the Nebraska obligations. They were not required to furnish any such evidence. On the face of the documents set up in the petition the plaintiff was entitled to judgment. He continued to be entitled to judgment unless the defendants proved a state of facts destroying the right. At the time of the trial before the referee it was not shown that Carolus was in default. At the time of the trial before the court it was found that the notes were paid. *Prima facie* the word "paid" indicates that the obligation has been satisfied and the demand extinguished.

"But payment of a promissory note is not a contract; it is performance of the obligation arising out of the promise to pay. Any one of the several parties to a joint contract, or any one in his behalf and at his request, or with his consent, may perform the obligation; and when performance has been offered or made, and the money accepted, the obligation becomes ex-

tinguished. The parties to the contract are no longer bound to each other by the *vinculum legis* of right and duty. The duty being discharged the right ceases to exist." (*Moran v. Abbey*, 63 Cal. 56, 61.)

The finding was entirely sufficient for the plaintiff. If the circumstances were such that the defendants were still liable in any way they were bound to prove the fact.

It is suggested that the plaintiff accepted the court's conclusion and undertook to comply with the requirement which it virtually imposed. Conceding, but not deciding, that the plaintiff's conduct is to be so construed, it is plain the purpose of the court was to be assured that defendant Van Valkenburgh and his associates were no longer subject to liability upon the Nebraska indebtedness. The plaintiff, perhaps, in the face of some obstruction, has fairly complied with the spirit of the order. The only object which the court could have had in view having been substantially attained, the plaintiff is entitled to judgment.

The plaintiff should recover the principal and interest of the second and third notes and a decree should be entered for the foreclosure of his mortgage as a first lien on the mill property. He should also recover the unpaid interest on the first note and the costs of the action. On the findings of the referee defendant Van Valkenburgh is entitled to an offset, which should be allowed him, with interest.

The judgment of the district court is reversed, and the cause is remanded with instruction to enter judgment according to the foregoing views.