Balohradsky v. Carlisle et al.

---

## J. B. Balohradsky
### v.
## N. S. Carlisle et al.

1. Evidence.—Where the issue was upon the point whether, in fact, there had been a purchase or a payment of certain notes and mortgages, evidence of all the negotiations which finally culminated in the transfer or surrender of them to the attorney of appellant was competent, as tending to show the character of the transaction and the understanding and intention of the parties when it was finally concluded.

2. Instructions.—Where the issue was whether there had been a purchase or a payment of certain notes and mortgages, and the introduction of the notes and mortgages indorsed to appellant made out a *prima facie* case entitling him to the possession of the property, an instruction which allowed the jury to infer from the fact that the amount due on said notes and mortgages was figured up and paid to the mortgagee, that such transaction was a payment and not a sale, thus practically withdrawing from their consideration the *prima facie* case made by the indorsement of the notes and assignment of the mortgage to appellant, was erroneous.

3 Degree of Proof.—In a civil cause it is error to instruct that a party must prove to the *satisfaction* of the jury, etc. The law does not require such a high degree of proof for the maintenance of an issue in a civil cause.

4. Attachment—Proof as to Fraud.—The averment in an affidavit of a fraudulent conveyance by the debtor, as a basis for the writ of attachment, is incompetent to prove the issue of fraud upon the trial against the officer for taking the property.

APPEAL from the Circuit Court of Kane county; the Hon. C. W. UPTON, Judge, presiding. Opinion filed February 29, 1884.

Mr. R. N. BOTSFORD, and Messrs. RUBENS, McGAFFEY & AMES, for appellant; as to admission of evidence, cited Greenleaf on Ev., § 108; Allen v. Duncan, 11 Pick. 308; McFarland v. Lewis, 2 Scam. 344; Boyden v. Moore, 11 Pick. 362; Milford v. Bellingame, 16 Mass. 108.

Mr. A. J. HOPKINS, Mr. N. J. ALDRICH, and Mr. CHARLES WHEATON, for appellees; that it is necessary to constitute a transaction a sale that both parties should then expressly or impliedly agree, one to sell and the other to purchase the paper, cited 2 Daniel on Negotiable Instruments, § 1221; Lancey v. Clark, 64 N. Y. 209; Eastman v. Plummer, 32 N. H. 238; Burr v. Smith, 21 Barb. 262; Dougherty v. Deeney, 45 Ia. 443.

PILLSBURY, J.   Action of replevin commenced by the appellant to recover possession of certain personal property seized by appellee Carlisle, sheriff of Kane county, under a writ of attachment sued out by one Watson against his debtor, Joseph Geller. The other appellees were the custodians of the sheriff.

The appellant claims ownership of the property by virtue of two chattel mortgages executed by Geller, thus making the present controversy one between a mortgagee and an attaching creditor.

Both mortgages were executed and recorded before the writ of attachment was levied hence the priority of the plaintiff's claim to the property depends upon the validity of the two mortgages through which he asserts title.

As to the older chattel mortgage, it appears that on the 25th day of April, 1882, one Stephen Beach and said Joseph Geller purchased the property in question, of one George Sutphen, and to secure a portion of the purchase money executed their two notes for $325 each, one payable in castings from the foundry, when required, and the other payable in six months

from date, with eight per cent. interest, and secured both of said notes by the chattel mortgage mentioned above.

The other mortgage was dated October 4, 1882, and executed by Geller to secure four notes signed by him and made payable to appellant, one dated April 25, 1882, for $300, one for the same amount dated June 3, 1882, one for $200, dated August 21, 1882, and one dated September 25, 1882, for $500, each of said notes becoming due one year after date thereof. This mortgage was recorded on the 5th day of October, 1882. The attachment writ was issued on the 11th day of October, and the levy made thereunder on the 16th by the appellee, Carlisle.

It seems that on the day of the levy, Sutphen, who then owned the mortgage first above mentioned, became advised that the sheriff was about to seize the property at the suit of Watson, and informed them of his mortgage, and as he claims, took possession of the property, and the levy was made subject to his mortgage.

The appellant claims that after Sutphen had taken possession of the property, and the levy had been made under Watson's writ, he, in order to protect his mortgage, had his attorney, Blanchard, purchase the Sutphen notes and mortgage, and had them assigned to him by Sutphen. That the Sutphen notes were valid and the mortgage securing them a prior lien upon the property while in Sutphen's hands, is not denied by counsel for appellee, but they claim the notes were paid by Geller through Blanchard.

On the trial at the circuit court the appellant introduced the Sutphen notes with an assignment indorsed upon them as follows: "Pay to J. B. Belohradsky." "George E. Sutphen." And the mortgage, with the following indorsement: "Aurora, 10–26–82. I assign the within mortgage to J. B. Belohradsky, for and in consideration of $445, by him to me paid." The introduction of these notes and mortgage, thus indorsed to appellant, made out a *prima facie* case entitling him to the possession of the property, and the burden of proof was then cast upon the defendants to show that the notes and mortgage were not valid obligations in his hands.

To do this they made Sutphen a witness, who testified that on the 26th day of October, Blanchard and Geller came to his office and wanted the notes, and after some figuring to ascertain the amounts due upon the notes, the sum of $445 was finally agreed upon, and Blanchard paid him that sum, and then asked him if he had any objection to indorsing the notes and mortgage to Belohradsky, and he replied he had not, then wrote the indorsements as they appear upon the notes and mortgage. Witness further stated that he did not intend to sell the notes, and did not understand that he had done so; that he supposed that he wanted to pay them off, and he received the money as payment.

In rebuttal the plaintiff called Blanchard, who testified that he was acting for appellant in obtaining the Sutphen mortgage; that he saw Sutphen three or four days before he finally paid the money, and at the time he had some conversation with Sutphen about appellant's second mortgage, and about purchasing his mortgage for the appellant.

The witness was then asked to state what was then said about the purchase of the mortgage by Belohradsky, but upon objection by the defendants, the court refused to permit the witness to answer the question, and the appellant excepted. He was also asked whether on that occasion he informed Sutphen for whom he was acting, but was not allowed to answer the question. In this we think the court committed error.

The issue was upon this point: whether, in fact, there had been a purchase or a payment of the notes and mortgages; and evidence of all the negotiations which finally culminated in the transfer or surrender of them to Blanchard was competent as tending to show the character of the transaction and the understanding and intention of the parties when it was finally concluded.

Suppose nothing was said at the time of the transfer of the notes about the appellant purchasing them, yet from prior negotiations, Sutphen knew that the object of Blanchard in paying the money due upon them was to obtain an assignment of them for the purpose of protecting the junior lien of appellant, and after he had received the money he indorsed

them as requested; could it be successfully urged that such transaction would not be a sale of the securities, because at that time Sutphen secretly intended to treat it as a payment? It would seem, in such case, that Sutphen ought not to be heard to say, after he received the appellant's money with the knowledge that the appellant was paying it upon a purchase of the notes, and indorsing them as shown, that he, without notice to the agent of appellant of his design, elected to treat the transaction as a payment and not a sale.

In this view, we think, the following instruction given for defendants below should have been refused:

" If the jury believe from the evidence that on the 26th day of October last, or thereabouts, the mortgagor, Geller, with Blanchard, an attorney, met with Sutphen, the mortgagee in said chattel mortgage, and figured up the amount due on said mortgage, or the notes secured thereby, together with other indebtedness of said Geller to said Sutphen, and that upon finding the amount of such indebtedness, the amount thereof, including the amount due on said notes and mortgage, was paid to said Sutphen then and there, then the jury have a right to infer therefrom that such payment was a payment and satisfaction of said notes and mortgage, and not a sale of the same, unless it is shown to their satisfaction from the evidence and by preponderance of proof that Sutphen, the mortgagee, understood at the time that it was not a payment and satisfaction thereof, but that it was then understood or intended by said mortgagee that it was to be taken and treated as a sale and assignment of said notes and mortgage."

By this instruction the jury are allowed to infer from the fact that the amount was figured up and paid to Sutphen; that such transaction was a payment and not a sale of the notes, thus, practically withdrawing from their consideration the *prima facie* case made by the indorsement of the notes and assignment of the mortgage.

There is no dispute that the amount due to Sutphen was ascertained and the money paid by Blanchard, but these facts are not inconsistent with the claimed purchase, especially when considered in connection with the assignment of the .

notes by Sutphen. The notes being properly indorsed by the payee to appellant the presumption arises that they were purchased by him, and this presumption is not rebutted by the fact alone that in determining the amount to be paid, the amount due upon them was figured up before the money was paid.

The instruction is also wrong in that it requires the appellant to prove to the satisfaction of the jury that Sutphen understood or intended a sale of the notes. As we have seen the presentation of the notes by appellant properly indorsed to him, made out a case for him upon this point, and the burden of proof was then cast upon the defendants to establish their claim that the transaction was a payment and not a sale.

Besides, the instruction, even if the burden of proof as to the intention of Sutphen rested upon appellant, requires a higher degree of proof than does the law for the maintenance of an issue in a civil cause. Ruff v. Jarrett, 94 Ill. 475

The appellant was the only witness who testified concerning the mortgage given by Geller to him. He says that he advanced the money to Geller, for which the four notes were given on the days the notes respectively bear date; that originally he held four other notes bearing same dates and for same amounts, which were secured by trust deed upon Geller's homestead, and about the 26th day of September, 1882, Mrs. Geller, who, he knew, furnished the money to purchase the homestead, desired him to take a mortgage upon the personal property to secure him and let her have the real estate, and he consented to do so, and Geller and his wife conveyed the real estate to him and he to Mrs. Geller, at which time he gave up the trust deed and notes, and afterward took the chattel mortgage in question, and the notes were drawn corresponding with the former ones; that he never was paid a cent upon his indebtedness and the transaction was but a change of securities, and so intended.

It is not perceived how such transaction operated as a satisfaction of the original indebtedness, nor that the taking of the chattel mortgage and the new notes can be said to be in any sense a revival of an old, extinguished indebtedness, as

some of the instructions given for defendants seem to assume, and therefore invalid against the existing creditors.

If the former notes and trust deed were given to secure existing indebtedness, the parties would have an undoubted right to change security as against any one not having a present lien on the property mortgaged.

We find no such evidence in the record tending to show payment of the debt secured by those notes and mortgages as would authorize the submission of that question to the jury. The only evidence shows a change merely of securities for the same debt, and the instructions in treating the transaction as a revival of a debt once paid were calculated to mislead the jury, and in our opinion should not have been given.

It is also objected that the court permitted the defendants to read in evidence the affidavit for attachment. In this we see no error. The property having been seized upon by *mesne* process, there was no judgment which established the relation of debtor and creditor between Geller and Watson, and as the sheriff could not attack the mortgages for fraud, except by proving that Watson was an attaching creditor, it was proper to allow the affidavit to be read in evidence as tending to prove such fact, and also as showing that the court was acting within its statutory jurisdiction in issuing the writ.

The averment in the affidavit of a fraudulent conveyance by the debtor as a basis for the writ of attachment is incompetent to prove the issue of fraud upon the trial against the officer for taking the property, and the jury should be cautioned against so considering it.

For the reasons stated the judgment will be reversed and the cause remanded.

Judgment reversed.