[Civil No. 1602. Filed March 30, 1918.]

[171 Pac. 989.]

BIG EYE MINING AND MILLING COMPANY, J. A. KET-CHERSIDE, and H. C. JOHNSON, Appellants, v. GUS LIVINGSTON, Appellee.

1. BILLS AND NOTES—PAYMENT—WHAT CONSTITUTES.—Where the lessee of a mine was to pay lessor's note within 90 days, in lieu of certain additional compensation for the lease, and the lease provided for a forfeiture on failure of lessee to perform covenants, but stipulated that no further liability should attach to lessee, the lessee having forfeited all rights under the lease and abandoned the property, and the lessor having assumed actual control, the subsequent purchase of said note by the lessee before maturity, with the intention of acquiring all rights of the payee, did not operate as payment

barring suit by subsequent indorsee, after maturity, who knew of the provisions of the lease.

[As to negotiation of note of debtor as payment of original debt, see note in **Ann. Cas.** 1917C, 364.]

2. BILLS AND NOTES—PAYMENT—QUESTION OF FACT.—In an action on note by plaintiff indorsee, whether payment by a prior indorsee of the face value of the note to the payee and payee's indorsement, without recourse, was a purchase or a payment extinguishing the note, *held* a question of fact.

APPEAL from a judgment of the Superior Court of the county of Yuma. Frank Baxter, Judge. Affirmed.

### STATEMENT OF FACTS BY THE COURT.

Action on a promissory note made and delivered by the appellants on the first day of December, 1915, payable to E. F. Sanguinetti "on demand or six months after date," the principal sum of $3,089.64, with interest from date at the rate of ten per cent per annum, payable quarterly, with a promise to pay a reasonable attorney's fee if collection enforced. The plaintiff is the owner and holder of the note by indorsement. Certain property of the makers of the note was attached to secure the judgment that might be rendered. The defendants pleaded certain acts of third parties as payment made to the original payee upon indorsement and transfer by him, and made at the instance of the makers, of which the holder had notice before accepting the note. The facts relied upon as payment appear in the opinion. The plaintiff had judgment, and the defendants appeal.

Mr. Peter T. Robertson, for Appellants.

Mr. Thomas D. Molloy, for Appellee.

CUNNINGHAM, J.—The Big Eye Mining & Milling Company is the owner of certain valuable mines situate in Yuma county. In the operation of such mines prior to December 1, 1915, it incurred certain indebtedness, a portion of which indebtedness was owing to E. F. Sanguinetti for supplies furnished the said company. On said December 1, 1915, it made, executed, and delivered the promissory note sued upon, and the other named appellants indorsed said note before delivery. About the thirtieth day of May, 1916, one W. W. Reese paid

to E. F. Sanguinetti the principal of the note, and Sanguinetti indorsed and delivered the note to said Reese without recourse. Thereafter W. W. Reese indorsed and delivered said note to one W. D. Riley without recourse in payment to said Riley of an obligation Reese was then owing to Riley, and appellee Gus Livingston, on account of the sale of their corporate stock of the appellant corporation by Reese, the proceeds of which sale he had not accounted for. Riley and Livingston discharged the said account of $2,616, and paid Reese the difference between that sum and the principal of the note upon acquiring the same. The transaction of transfer of the note by Reese to Riley was consummated about July, 1916, after the note became due. Thereafter W. D. Riley indorsed the note to Gus Livingston. On November 4, 1916, Gus Livingston commenced this action.

The defendants Big Eye Mining & Milling Company, J. A. Ketcherside, and H. C. Johnson join in an answer. H. V. Ketcherside makes no defense, and the abstract of the record does not show that said last-named defendant was served in the case. The defense interposed by the said answering defendants is alleged to be that of payment resulting from the following: That one C. H. Kleinbeck and W. W. Reese as copartners, on the twenty-first day of December, 1915, and in the name of C. H. Kleinbeck, entered into a contract with defendant Big Eye Mining & Milling Company, whereby said mining and milling company leased its certain described mines to said partnership for a period of one year in consideration of a payment of $1 and the promise of said partnership to keep and perform other expressed covenants and agreements. The said lessees agreed to do the necessary assessment work for the years 1915 and 1916, and make statutory proof thereof; pay taxes on personal property for the year 1916. The rent reserved is stated as a royalty on the net returns from ore shipped; they agreed to make an expenditure tending to the development of the mines in the sum of at least $5,000 every 60 days until $25,000 has been so expended. "As additional compensation for said lease the said lessees agree to pay, on or before 90 days from the date hereof, certain indebtedness owing by the lessor," including the note owing to E. F. Sanguinetti, the note in suit; also to pay on or before the exercise of a certain option executed of even date herewith (whereby said lessees herein have an option to purchase a block of stock

of about 500,000 shares of the Big Eye Mining & Milling Company from H. V. Ketcherside, trustee) certain additional indebtedness of the lessor as set forth in the itemized statement attached hereto and marked Exhibit "B."

The lease contains the forfeiture clause, wherein the parties agree that:

"Time is of the essence of this lease, and in the event of the failure or refusal of said lessees to make any payments or perform any obligations herein contained on his part to be performed, then at the option of said lessor this lease shall become null and void, and of no effect, and this lessor shall be entitled to take immediate possession of said premises, and all moneys paid by said lessees to said lessor, or expended by said lessees on the property under this lease, . . . shall be forfeited to the lessor as liquidated damages. . . . In the event that said lease shall be forfeited prior to the termination thereof, peaceable possession shall be delivered to the lessor of said premises, together with all machinery, etc.; . . . then and in that event upon such delivery said lessees shall be free from any further obligation to do or perform any act or make any payment under said lease. . . ."

The answer, after setting forth a copy of said lease containing the above-quoted language, alleges that W. W. Reese was a partner with C. H. Kleinbeck in that lease; that the item of indebtedness shown in Schedule A is the identical item covered by the note sued on which Kleinbeck obligates himself to pay; that pursuant to said contract the lessees entered into possession of the property, and on or about the thirtieth day of May, 1916, the said Reese, acting for himself and Kleinbeck and "pursuant to and in obedience of the said contract and the covenants therein contained, in due course discharged the said note in full by paying the full amount due thereon to the payee named therein, . . . " and so notified defendants; that thereafter on the third day of September, 1916, said Reese without authority indorsed said note to W. D. Riley; that Riley was informed of all of the foregoing facts, and had full knowledge of such facts before he acquired said note; that plaintiff Livingston was fully informed and had full knowledge of said facts before he acquired said note. Said defendants pray that the plaintiff take nothing by his action.

The evidence may be conceded to fairly establish the following facts set forth in the special answer: That is, that Sanguinetti transferred said note to Reese for a valuable consideration before due, specially indorsed payable to W. W. Reese or his order without recourse; that Reese immediately informed the secretary of the Big Eye Mining & Milling Company of the transaction he had with Sanguinetti; that after the note became due, Reese negotiated it to W. D. Riley for a consideration, and without recourse, without informing the makers of his transfer; that Riley knew before accepting the note the terms and conditions of the lease of December 21, 1915, and Reese's relation thereto; that likewise Livingston knew all the facts leading up to his possession of the paper. The evidence fairly tends to establish such facts and knowledge of the said facts by the parties. With such facts before the court, judgment was rendered for the plaintiff, and the answering defendants appeal.

The assignment of errors by the appellants is so general that we are not able to determine the specific error or errors relied upon for a reversal. I presume the appellants contend that the judgment is not sustained by the evidence, and therefore the judgment is contrary to law.

The controlling question presented by the defense is whether the note in question was discharged by the transaction between Reese and Sanguinetti on May 30, 1916, which was consummated by Reese's paying to Sanguinetti the principal sum named on the face of the note and taking the paper specially indorsed to order without recourse. Assuming, as established by proof, that Reese acted in that transaction for and in behalf of Kleinbeck and himself as partners for the reason he was dealing with matters and funds belonging to and with which the partnership was concerned, and with partnership assets, Reese's acts in the premises may fairly be regarded as partnership acts. If the note was discharged by the partnership payment to Sanguinetti, then certainly Reese had no right to reissue the note as the obligation of the original makers, and Gus Livingston having acquired the paper after it became payable, and chargeable with knowledge of the infirmity in the title of Reese, he cannot recover on the note.

Whether the transaction between Sanguinetti, the holder of the note, and Reese, who paid the money, is of such a character as constituted a payment that operated to extinguish the

note, is a question of fact.  *Binford* v. *Adams,* 104 Ind. 41, 3 N. E. 753; *Dougherty* v. *Deeney,* 45 Iowa, 443; *Moran* v. *Abbey,* 63 Cal. 56; *Jones* v. *Bobbitt,* 90 N. C. 391; *Balohradsky* v. *Carlisle,* 14 Ill. App. 289.  The trial court has necessarily found as a fact that said transaction was of such character as did not constitute a payment that operated to extinguish the debt evidenced by the note.  The lessees' entire obligation with regard to the payment of the note in suit rests upon the following language of the lease, to wit:

"As additional compensation for said lease, the said lessees agree to pay, on or before ninety (90) days from the date hereof, certain indebtedness now owing by the lessor, all as set forth in the itemized statement attached to this lease and marked Exhibit 'A.' . . ."

The exhibit attached is a list of debts, including a debt owing to Sanguinetti, shown to be the sum of the principal of the note in suit.  The parties concede that the Sanguinetti debt shown on the list was covered by the note, and the purpose was to show the note on the list.  The debts listed aggregate $4,000. The clear meaning to be given to the provisions of the lease granted is that the lessees promised thereby to pay the lessor $4,000 additional compensation in 90 days after the date of the lease; that in discharge of said promise, the lessees had the option of paying said sum direct to the creditors of the lessor, named in the list, in lieu of paying the same to the lessor.  No lawyer will deny that the obligation assumed would have been discharged by the lessees if within the 90 days they had paid the $4,000 direct to the lessor instead of paying the lessor's creditors.  The option expired at the end of 90 days. If any obligation of the lessees remained, that obligation certainly was to pay said "additional compensation" to the lessor. The lessees failed to keep this promise, and the time for performance expired.  After the 90 days expired the lesses were under no obligation to pay the lessor's debts that were listed in Exhibit "A," including the note in suit.  Whether the obligation remained to pay the lessor the additional compensation promised is not a question in this case.  To a certainty, on the thirtieth day of May, 1916, when Reese acquired the note, the lessees had wholly failed to perform the assessment work for the year 1915; they had failed to place improvements on the property worth $5,000 every 60 days from the date of the lease; they had failed to pay the promised additional com-

pensation for the grant of the lease, and as a fact the lessor had placed a watchman in charge of the property. The fair inference to be drawn from this change in the relation of the parties toward each other and toward the mines is that all parties concerned in the lease regarded and treated the lease as no longer in force or binding upon any party thereto; that the lessees had finally forfeited all of their leasehold rights and abandoned the property; and that the lessor had assumed actual possession of the property. Such was the effect of the trial court's holding, and such was the effect of Reese's understanding of the situation as testified by him. He explains his purpose of taking over the note was to prevent Sanguinetti from commencing an action to collect the note, and thereby seriously interfere with the negotiations he then had on hand with prospective buyers of the mines, or prospective buyers of stock in the Big Eye Mining & Milling Company. The trial court was fully justified in holding that Reese's intention in taking over the note was to acquire all of the rights of the payee, Sanguinetti, in the paper. The special indorsement placed on the note, coupled with the fact that the transaction occurred after the lease terminated and before the date of maturity, corroborates Reese's testimony tending to establish the purpose he had in acquiring the note.

The title acquired by Reese was that of Sanguinetti, and that title was not in the least impaired by Reese notifying the makers of the note that he had acquired the possession of the note, nor by his offer to deliver up the note in consideration of stock of the Big Eye Mining & Milling Company. Reese's acts were consistent with his avowed purpose in acquiring the note. The Big Eye Mining & Milling Company do not pretend to have credited the amount represented by the note on Kleinbeck's agreement to pay additional compensation for the lease. If the lease ceased to be binding by reason of breaches of its covenants, no compensation for injury resulting from such breaches can be recovered other than to declare a forfeiture and recover possession of the leasehold estate. Payment of the promised consideration cannot be recovered by action in the courts, and this is the effect to be given to the defense as pleaded in the answer if such defense is given any effect.

The plaintiff acquired all of the rights in the note which Reese owned at the time of a transfer. The judgment is sup-

ported by the evidence, and upon the whole case it clearly appears that justice has been awarded. The judgment is therefore affirmed.

FRANKLIN, C. J., and ROSS, J., concur.