[L. A. No. 50.     Department Two.—February 28, 1896.]

## A. W. EAMES, APPELLANT, *v.* S. C. HAVER, RESPONDENT.

APPEAL — ORDER GRANTING NEW TRIAL — BREACH OF CONTRACT TO EXCHANGE STOCK — MEASURE OF DAMAGES — ERROR IN INSTRUCTIONS — REMISSION OF PERCENTAGE OF VALUE—CONDITIONAL REVERSAL.—Upon appeal by the plaintiff from an order granting a new trial to the defendant, in an action for breach of a contract made as part consideration for the conveyance of land from plaintiff to defendant, by which defendant agreed to exchange stock in a corporation given as part of the purchase money for an equal number of shares of stock in another corporation, upon payment by plaintiff to the defendant of brokerage not exceeding five per cent of the latter stock, where the new trial was granted for error in instructions to the jury as to the measure of damages being the difference in value in the price of the stock, which ignored the percentage agreed to be paid by the plaintiff, such error

CXI. CAL.— 26

may be corrected, upon offer of the appellant to remit the percentage upon the highest estimate of value given by witnesses for the defendant, of the stock withheld from the exchange, by requiring the defendant to accept the offer, and reversing the order on condition that the appellant remit the percentage and pay the costs of appeal.

ID.—INSUFFICIENCY OF EVIDENCE—DIFFERENCE IN VALUE OF STOCK—ADMISSIONS OF ANSWER—TESTIMONY OF DEFENDANT.—The order granting a new trial to the defendant in such action cannot be sustained on the ground of insufficiency of the evidence to justify the verdict as to the difference in value of the stock of the two corporations, where it appears by the admissions of the answer, taken in connection with the testimony for the defendant, that the difference in value was greater than the amount of the verdict of the jury.

ID. — OFFER TO EXCHANGE PLEDGED STOCK — WAIVER OF PRODUCTION— HARMLESS OBSCURITY IN INSTRUCTION. — An instruction to the jury that "the fact that the stock of plaintiff was pledged as security, has no bearing on the case, *and* if the jury find that the plaintiff was able and willing to furnish his part of the exchange, and offered to do so, and the defendant refused to make such exchange, then plaintiff was excused from making an absolute proffer of the actual stock," taken in connection with other instructions to the effect that the conduct of the defendant in denying any agreement or obligation to make the exchange, and in refusing to make it, and in not objecting to the offer to deliver the stock upon the ground that it was not produced, waived or excused the actual production of the stock, and that the ability of plaintiff to produce it with the consent of the pledgee was a sufficient tender, is not erroneous to the prejudice of the defendant, and the use of the word "and" which should be omitted to avoid obscurity, and make the instruction clearly correct, is not ground for a new trial.

APPEAL from an order of the Superior Court of San Bernardino County granting a new trial. JOHN L. CAMPBELL, Judge.

The facts are stated in the opinion.

*Frank C. Prescott*, for Appellant.

*C. C. Bennett*, for Respondent.

VANCLIEF, C.—The complaint in this action may be stated substantially as follows:

In May, 1893, the defendant purchased from plaintiff twenty acres of land with orange grove thereon, for which he was to pay $8,000 in cash, and assign and deliver to plaintiff one hundred shares of the capital stock of a corporation named "Bear Valley and Alessandro

Development Company." As a part of the transaction, however, it was agreed that, on demand of the plaintiff, the defendant would exchange for said stock an equal number of shares of the stock of a corporation named "Bear Valley Irrigation Company," the expense of such exchange not exceeding five per cent of the value of the last-mentioned stock, to be paid by plaintiff to defendant as brokerage. At the time the land was conveyed by plaintiff (May 6, 1893) defendant paid the $3,000 and also assigned and delivered to plaintiff one hundred shares of the stock of the Bear Valley and Alessandro Development Company, which will hereinafter be ca led the development company. Defendant's promise to exchange stock as aforesaid was a part of the consideration for the conveyance of the land by the plaintiff.

Thereafter, within a reasonable time, on or about June 9, 1893, plaintiff demanded of defendant an exchange of stock according to the agreement, tendering to defendant said one hundred shares of development company stock, and five per cent on the value of one hundred shares of the irrigation stock, but defendant refused to make the exchange, denying the alleged agreement to make such exchange. That at the time of said tender and demand one hundred shares of the stock of the irrigation company were of the value of $10,000, and the stock of the development company was of no value whatever. That since said demand and refusal both the irrigation company and the development company have become insolvent and the stock of neither has any market value.

Plaintiff alleged that he was damaged by defendant's breach of the agreement to exchange stocks in a sum equal to the difference of value of said stocks, to wit, the sum of $7,910, at the time of said demand and refusal, and prays judgment for that sum.

In his answer defendant denies the alleged agreement to exchange stocks; denies the alleged tender and demand by plaintiff; also denies that one hundred shares of the irrigation stock was of greater value than $4,000

at the time of the alleged demand and tender by plaintiff; and further denies that one hundred shares of the stock of the development company was then " of less value than $4,000."

The cause was tried by a jury whose verdict was in favor of plaintiff, assessing the damages at $4,850, for which sum judgment was rendered against the defendant.

Defendant moved for a new trial, which was granted by the following order:

" The motion for new trial heretofore made in this case upon the part of defendant will be granted, upon the following grounds, to wit: 1. The court erred in giving instructions Nos. 3, 4, and 6 at the request of the plaintiff, as each of said instructions ignored the five per cent commission which defendant was entitled to under the testimony and plaintiff's own pleadings; 2. Upon the insufficiency of the evidence to justify the verdict, in this, that the weight of the evidence does not support the verdict as to the difference in value of the stock of the Bear Valley and Alessandro Development Company and the stock of the Bear Valley Irrigation Company."

1. The instructions "Nos. 3, 4, and 6," referred to in the order as being erroneous, related to the measure of damages, and were to the effect that if the market value of the irrigation stock exceeded that of the development stock at the time of the demand of plaintiff for an exchange of stocks, the difference of such values would be the measure of the damages suffered by plaintiff, and that plaintiff was entitled to recover as damages a sum equal to such difference.

It is admitted that a brokerage, not exceeding five per cent of the value of the irrigation stock, should have been deducted from the excess of the value of that stock over that of the development stock, and, therefore, that the measure of damages, as stated in the instruction, is too large by the amount of such brokerage.

Appellant contends that this error can be corrected

by a modification of the judgment without any necessity for a new trial, and offers here, for the first time, to remit from the judgment a sum equal to five per cent on the greatest possible value attributed to one hundred shares of the irrigation stock by the complaint or by any part of the evidence.

In the complaint the value of one hundred shares of the irrigation stock, at the time of plaintiff's demand for the exchange, is alleged to have been $10,000; and the answer of the defendant denies that it was then of any greater value than $4,000. The highest estimate of the value of that stock (one hundred shares), at any time, by defendant's witnesses was $10,500; and appellant offers to remit from the judgment a sum equal to five per cent of this valuation, which would be $525; and I think such remittance would fully compensate the respondent for all possible injury resulting from the alleged erroneous instructions, except his costs of this appeal.

Considering all the circumstances, I think the offer of appellant to remit $525 from the judgment, which is equal to five per cent of the value of the irrigation stock, is quite liberal; and that respondent should be required to accept it on the condition that appellant pay all costs of the appeal. (*Atherton* v. *Fowler*, 46 Cal. 320; *Kern Valley Bank* v. *Chester*, 55 Cal. 49; *Woods* v. *Merrill*, 57 Cal. 435. See also *Davis* v. *Southern Pac. Co.*, 98 Cal. 18.) Perhaps the condition that appellant pay all costs of the appeal would not be just if he had offered to remit the $525 in the lower court before a new trial was ordered.

2. Nor do I think the second ground upon which the new trial was granted can be sustained, namely, insufficiency of the evidence to justify the verdict as to the difference in value of the stock of the development company and that of the irrigation company.

The court evidently overlooked the effect of the pleadings upon the value of the development stock. The complaint alleges that, at the time the exchange of

stocks was demanded, one hundred shares of the development stock was of no value.

The answer denies that one hundred shares of the development stock was then, or ever, of less value than $4,000. Thus the defendant failed to deny the allegation of the complaint as to the value of the development stock, except to the extent of $4,000, and by statutory implication, admits the truth of the allegation in the complaint except to that extent. Besides there is no evidence tending to prove that the market value of the development stock ever exceeded $40 per share. The defendant, who was a broker dealing in stocks, and who testified at greater length than any other witness on either side, said nothing as to the market value of the development stock, except that he had never represented to plaintiff that it had any market value. The only other witnesses on the part of the defendant — Mr. Waters and Mr. Sterling—each testified that he did not know that the development stock ever had any market value, though Mr. Waters said he had heard of one private sale at $105 per share, at some time between March and September, 1893; whereas plaintiff's demand for the exchange of stocks was on June 9, 1893. On the part of the plaintiff Mr. Granger testified that he was a stockbroker and knew the market value of the stocks in question in May and June, 1893, and that on and about the ninth day of June, 1893, the market value of the irrigation company stock ranged from $105 to $120 per share, and at the same time the development stock had no market value, " because there was no chance to sell any of it. . . . . It could be bought for almost any price "; that it had been offered to him at forty cents per share.

There was no evidence tending to prove that either its market value or its intrinsic value was as much as forty dollars per share, at any time.

It follows that neither upon the pleadings nor by the evidence could it have been found or presumed that one hundred shares of the development company stock was

of greater real or market value than $4,000, at any time
during May and June, 1893.

As to the market value of one hundred shares of the
stock of the irrigation company at the time of plaintiff's
demand for the exchange of stock, only two witnesses—
Mr. Granger for plaintiff, and Mr. Waters for defendant
— both stockbrokers, testified.    Mr. Granger testified
that such value of one hundred shares was $10,000 to
$12,000, and Mr. Waters that it was $9,500 to $10,500.
The difference between this lowest estimate, $9,500, and
the highest estimate that could have been made of the
value of one hundred shares of the stock of the develop-
ment stock, $4,000, is $5,500, which is $650 more than
the verdict of the jury.    So it is not improbable that the
jury did deduct the brokerage commission from the dif-
ference in values of the stocks of the two corporations,
notwithstanding the omission of the court to instruct
them so to do; but however this may have been, the
proffered remission of $525 from the judgment, and pay-
ment of costs of appeal by plaintiff, will surely compen-
sate defendant for all detriment suffered by him in
consequence of the alleged error in the instructions for
which the new trial was granted.

3. It is contended, however, that the order granting
a new trial was justified on another ground than those
stated by the court, to wit, that the court erred in giv-
ing the twelfth instruction at request of plaintiff, as fol-
lows:

" 12. The fact that the stock of plaintiff was pledged
as security in the hands of others has no bearing upon
the case, *and* if the jury find that the plaintiff was able
and willing to furnish his part of the exchange, and
offered to do so, and the defendant refused to make such
exchange, then plaintiff was excused from making an
absolute proffer of the actual stock."

It appeared from the evidence that the identical one
hundred shares of development stock delivered to plain-
tiff had been pledged by him to secure a debt, with the
understanding that it was to be exchanged for irrigation

stock as per agreement. Mr. Granger, who demanded the exchange as agent for plaintiff, testified that the pledgee was willing and anxious to have the exchange made, and offered to permit it to be made, and that when he demanded the exchange he knew he could get the pledged stock and deliver it to defendant; but that when he demanded the exchange and offered to deliver the development stock, the defendant denied any agreement or obligation on his part to make the exchange, and positively refused to exchange, so that there was no occasion or necessity for producing and exhibiting to the view of the plaintiff the certificate of the development stock; and that defendant made no objection to his offer to deliver the stock on the ground that it was not actually produced at the time it was offered and the exchange demanded. In connection with the instruction in question the court also instructed the jury that, if they found the facts testified to by Mr. Granger to be true, the conduct of the defendant waived or excused the actual production of the stock, and that the offer to produce it with the ability to do so was a sufficient tender. Under these circumstances, I think the instruction was not erroneous to the prejudice of the defendant; and if the word " and," which I have underscored, in the third line of the instruction, be omitted, as I think it should be in the reading, all obscurity would thereby be removed; and, so read, the instruction is clearly correct. (*Hanson* v. *Slaven*, 98 Cal. 383.)

I think the order granting a new trial should be reversed on the conditions that, within ten days after the filing of the *remittitur* in the court below, the appellant remit from the judgment the sum of $525 and pay all costs of this appeal; but if these conditions are not performed by appellant said order should stand affirmed.

SEARLS, C., and BRITT, C., concurred.

For the reasons given in the foregoing opinion the order appealed from will be reversed on the conditions that, within ten days after the filing of the *remittitur* in

the court below, the appellant remit from the judgment herein against the respondent the sum of $525, and pay all costs of this appeal; but if these conditions are not fully performed by the appellant within the period above named, then said order shall stand affirmed.

McFARLAND, J., TEMPLE, J., HARRISON, J.

Hearing in Bank denied.