[Civ. No. 15973.   First Dist., Div. One.   June 23, 1954.]

RAY BOLTON et al., Respondents, v. J. W. MARTIN, SR., et al., Appellants.

Hoge, Fenton & Jones for Appellants.

Bardin & Cunningham and Russell Scott for Respondents.

PETERS, P. J.—This action was brought by plaintiff Letty Bolton, and by her husband, Ray Bolton, for damages for the serious injuries received by Mrs. Bolton when hit by an automobile driven by defendant George Soares, who was, at the time, acting in the course and scope of his employment with the other defendants. The pleadings presented the issues of the negligence of Soares and the contributory negligence of Mrs. Bolton. The jury returned a verdict for the defendants. Plaintiffs moved for a new trial on all statutory grounds. The trial court granted the motion by a general order that did not specify the grounds upon which it was granted. The defendants appeal. On this appeal all parties agree that the new trial was granted because the trial court was of the opinion that a particular instruction on last clear chance offered by defendants and given by the trial court was misleading and erroneous. This, and the propriety of giving any instructions at all on the doctrine of last clear chance, are the only points discussed by the parties.

The law applicable to such an appeal is clear. "The granting or denial of a new trial is a matter resting so largely in the discretion of a trial court that it will not be disturbed except upon a manifest and unmistakable abuse. This is especially so when the discretion is used in awarding a new trial, for this action does not finally dispose of the matter, and it is only in rare instances and on very strong grounds that the reviewing court will set aside such an order. . . .

". . . But so long as a reasonable or even fairly debatable

justification under the law is shown for the action taken, that action will not be set aside, even if, as a question of first impression, the appellate court might feel inclined to take a different view." (4 Cal.Jur.2d p. 476, § 598, citing many cases; see, particularly, *Scott* v. *Renz*, 67 Cal.App.2d 428 [154 P.2d 738]; *Conroy* v. *Perez*, 64 Cal.App.2d 217 [148 P.2d 680]; *Mazzotta* v. *Los Angeles Ry. Corp.*, 25 Cal.2d 165 [153 P.2d 338].)

■ Thus, on this appeal, the action of the trial court in granting the motion for a new trial because of the giving of the challenged instruction can be reversed only if, assuming the facts warranted instructions on last clear chance at all, the questioned instruction was absolutely accurate and under no reasonable interpretation could possibly have misled or confused the jury. ■ All presumptions favor the order as against the verdict. It is not necessary to find, in order to uphold the trial court, that the giving of the instruction was prejudicial to the plaintiffs. If the challenged instruction was erroneous in any degree, or even if it is only "fairly debatable" that such instruction may have been misleading, the broad discretion of the trial court may not be disturbed, even if this court, had the question been presented to it in the first instance, would have found the error minor, and would not have granted the motion. Thus, the burden on the one attacking such an order is a very heavy burden indeed. It has not been sustained in this case.

The accident occurred on the clear, dry, sunny afternoon of May 5, 1952, on United States Highway 101, about a mile south of Gonzales, Monterey County. In this area the highway runs north and south, is straight and level in both directions from the point of impact, has two 12-foot lanes of macadam pavement divided with a white line, has 6-foot oiled shoulders bordering each lane, and each oiled shoulder is, in turn, bordered by a graveled shoulder at least 6 feet wide. Thus, the total width of the highway is 48 feet.

The Boltons, together with Mrs. Bolton's mother, were traveling south in this area, with Mr. Bolton driving, when they observed a head of lettuce lying on the paved highway. They decided to pick it up. Mr. Bolton parked the automobile on the right-hand side of the highway. There is a conflict in the testimony as to just where he parked. Mr. Bolton testified that his car was partly on the westerly dirt shoulder and partly on the adjoining oiled shoulder. Soares testified that the Bolton car was half on the main traveled highway

and half on the oiled shoulder. Mrs. Bolton could not remember where the car was parked. There is also a direct conflict as to the location of the head of lettuce. The Boltons testified that, after they had parked, the lettuce was from 4 to 6 feet to the rear of their vehicle and in the northbound lane of the highway just across the white line. Soares, who was traveling north, did not see the head of lettuce prior to the accident, but he did see Mrs. Bolton in the act of picking it up. He fixed this point as being about in the middle of the oiled shoulder bordering the northbound lane of the highway; in other words, across the highway from where the Bolton car was parked, off the paved portion of the road, and about 15 or 20 feet behind the Bolton car.

Mrs. Bolton got out of her car on the right-hand side, walked to the rear of the car, and proceeded out onto the highway, after looking in both directions. There was no traffic at all approaching from the north, but she did see the Soares' car approaching from the south. When asked how far away the Soares' car then was, she stated: ''Well, I am not very good but it looked to me like it was a mile away.'' On cross-examination she testified that she saw the Soares' car ''A long ways away.''

Soares testified that he first saw Mrs. Bolton come from behind the parked car and walk across the highway when he was about 400 feet from her; that he was then going 50 to 55 miles per hour; that she walked across the highway onto the east shoulder and picked up the head of lettuce; that when he was about 250 feet from her, she stood up and turned her body so as to face generally in his direction; that he assumed that she saw his approach; that he was then traveling at 35 to 40 miles per hour; that at this point he started to sound his horn, which he continued to do until he was within 50 feet of Mrs. Bolton, when he stopped sounding his horn. Shortly after the accident Soares made a report to the highway patrol officer, but did not then mention that he had sounded his horn. Soares also testified that after seeing Mrs. Bolton pick up the head of lettuce he continued driving straight ahead in the northbound lane about 3 feet from the center line; that he did not put on his brakes, but did release the pressure on the accelerator pedal, keeping his foot on it; that when he was about 15 feet from where Mrs. Bolton was standing, she walked or ran out on the highway into the path of his car; that at the last moment he swerved his car to his left in an attempt to avoid the

accident, but Mrs. Bolton walked or ran some 3 feet onto the main highway and into the right side of his automobile. The right side of the automobile, after the accident, showed evidence of damage.

Mrs. Bolton testified that after she picked up the lettuce about in the center of the highway she turned and looked towards her automobile; that she looked in a southwesterly direction, but mainly westerly; that she then glanced to the north towards Gonzales; that she did not look towards the south, the direction from which Soares was approaching, after she picked up the lettuce; that at no time did she hear an automobile horn. She remembers nothing more prior to the accident.

Mr. Bolton did not see the actual impact because he was sitting in his car listening to the car radio and talking to his mother-in-law. The accident occurred to the rear of his car. His mother-in-law did not see any portion of the accident.

After the impact the Soares' car continued up the highway, crossed the southbound lane, crossed the two westerly shoulders, narrowly missed a telephone pole, continued on off the road and up onto a 3-foot embankment bordering the Southern Pacific Railroad right-of-way, and continued on for some 200 or 300 feet thereafter, before stopping, a total of some 400 or 500 feet after the collision. Soares testified that he did not apply his brakes at any time while approaching Mrs. Bolton or thereafter; that at the last second when she stepped out into his car he swerved left and attempted to apply his brakes, but lost control of his automobile which seemed to be going faster and faster because he apparently put his foot on the gas instead of the brakes. After his car stopped he got out and went over to where Mrs. Bolton was lying on the pavement. Admittedly, the first thing he said was "My brakes didn't hold." He also admitted reporting to the employer-defendants that the cause of the accident was that his brakes did not hold. Following the accident the brakes were checked by two garages, and each reported that they were in perfect working condition.

After the accident Mrs. Bolton was found lying 75 feet in back of the parked car and in the middle of the northerly lane of the highway. She suffered serious and permanent injuries, including the loss of one leg, a deep and long gash in her abdomen, injuring the stomach organs, and serious and permanent injuries to her right hand.

At the conclusion of the evidence the trial court gave proper

instructions on the general issues involved, and, at the request of respondents, gave several correct instructions on the doctrine of last clear chance. In addition, at the request of appellants, the trial court gave a negative instruction on that doctrine, that is, an instruction stating under what circumstances the doctrine does not apply. Both sides concede that the trial judge granted the motion for a new trial because he was of the opinion that this negative instruction was misleading and erroneous.

The appellants argue that whether the challenged instruction was or was not correct is immaterial because, under the evidence, the doctrine of last clear chance was not applicable, so that the form of the instructions given on the doctrine, even if erroneous, could not have adversely affected respondents. This point requires but scant consideration. ▉ The doctrine was clearly applicable under respondents' evidence. According to their evidence, Mrs. Bolton was standing in the middle of the highway. She was negligent in not having kept a proper outlook, but she was oblivious to the approaching danger. If respondents' evidence is correct, Soares first saw her when he was at least 400 feet away, and saw her again after she picked up the lettuce when he was at least 250 feet away. Although Soares places her on the side of the road out of danger, respondents place her practically in the center of the highway in an obvious place of danger. Soares made no attempt to apply the brakes. There is negative evidence, sufficient to support a finding, that no horn was sounded. He proceeded ahead at what the jury could have found was an excessive rate of speed without any attempt to avoid running into Mrs. Bolton. There is evidence that his brakes were in good working order, and also evidence that they did not work. Soares, up to the moment of impact, if respondents' evidence is to be believed, had not only the last, but a clear chance to avoid the accident by sounding his horn, applying his brakes, or by turning slightly into the southbound lane, there being no traffic approaching in that lane. Thus, the jury could have found, had they believed respondents' evidence, that all of the requisite elements of the doctrine were present. (*Girdner* v. *Union Oil Co.*, 216 Cal. 197 [13 P.2d 915]; *Daniels* v. *City & County of San Francisco*, 40 Cal.2d 614 [255 P.2d 785]; *Buck* v. *Hill*, 121 Cal.App.2d 352 [263 P.2d 643], and cases therein cited.) The fact that the evidence was conflicting on several elements of the doctrine is immaterial. The respondents were entitled

to instructions on the doctrine as long as the factual circumstances testified to by them, if found to be true, would justify its application. (*Simmer* v. *City & County of San Francisco,* 116 Cal.App.2d 724 [254 P.2d 185] ; *Sills* v. *Los Angeles Transit Lines,* 40 Cal.2d 630 [255 P.2d 795] ; *Galbraith* v. *Thompson,* 108 Cal.App.2d 617 [239 P.2d 468] ; *Wright* v. *Los Angeles Ry. Corp.,* 14 Cal.2d 168 [93 P.2d 135].)

■ The trial court is justified in refusing such instructions only where it can be said that, as a matter of law, under no reasonable interpretation of the evidence, and regardless of conflicts, the elements of the doctrine are not shown. (*Daniels* v. *City & County of San Francisco,* 40 Cal.2d 614 [255 P.2d 785] ; *Selinsky* v. *Olsen,* 38 Cal.2d 102 [237 P.2d 645].) That is not this case. The jury was properly instructed on the doctrine.

■ We turn now to a consideration of the challenged instruction offered by the appellants. It reads as follows: "With regard to the doctrine of last clear chance, you are hereby instructed that that doctrine of law does not apply where the plaintiff is aware of the approach of an automobile and is guilty of negligence up to the very moment of the happening of the accident and by the exercise of ordinary care could have avoided the accident."

The appellants contend that this instruction in all respects correctly states the law as to when the doctrine does not apply. Respondents urge that the instruction is erroneous, misleading and confusing in several respects. The trial court believed that it was erroneous or misleading in some undisclosed respect, because it granted a new trial because of the giving of this instruction. As already pointed out, if this instruction was erroneous in any degree, or if it is "fairly debatable" as to whether such instruction may or may not have been misleading, the action of the trial court must be affirmed.

The instruction declares that if three elements exist, the doctrine is not applicable. It states that if the plaintiff was "aware of the approach of an automobile," and was negligent up to the moment of impact, and by the exercise of ordinary care could have avoided the accident, the doctrine is not applicable. Thus, if plaintiff knew of the approach of the Soares' car, regardless of where it was when such knowledge was attained, and regardless of whether or not such approaching car, to a reasonable person, would constitute a known hazard, and the other two elements existed, the jury must

find for the defendants. Thus, even if the jury had found that when Mrs. Bolton saw the Soares' car about a "mile" away, or a "long ways away," such car did not constitute a danger to a reasonable person, and had also found that Mrs. Bolton was negligent in not keeping a lookout on a main highway, and could have avoided the accident had such a lookout been kept, nevertheless they were in effect directed to find for the defendants, regardless of the degree of Soares' negligence, and even if the approaching car, seen by Mrs. Bolton, would not have constituted a hazard to a reasonable person. That is not the law.

One of the elements that must exist for the doctrine of last clear chance to apply is that, after plaintiff, by her negligence, has got herself in a position of danger, she is unable to get out of such danger either because it was "physically impossible for her through the exercise of ordinary care to escape from the danger, or she was totally unaware of impending danger in her position." That quotation is taken from one of the correct instructions given on the doctrine in this case. This limitation was stated by the Supreme Court in *Daniels* v. *City & County of San Francisco,* 40 Cal.2d 614, 619 [255 P.2d 785], as follows: "An instruction stating the doctrine is proper when there is evidence showing: '(1) That plaintiff has been negligent and, as a result thereof, is in a position of danger from which he cannot escape by the exercise of ordinary care; and this includes not only where it is physically impossible for him to escape, but also in cases where he is totally unaware of his danger and for that reason unable to escape; . . .' (*Girdner* v. *Union Oil Co.* [216 Cal. 197 (13 P.2d 915)] p. 202." (See, also, *Buck* v. *Hill,* 121 Cal.App.2d 352, 356 [263 P.2d 643],) Thus, to state this limitation negatively, the doctrine does not apply if plaintiff is aware of his position of danger in which he has negligently placed himself, and could extricate himself. That is an entirely different concept from being "aware of the approach of an automobile," as the jury here was instructed. Awareness of danger and awareness of an approaching automobile are not necessarily synonymous terms. One may be aware of the approach of an automobile and still be totally unaware of any immediate danger. This distinction is obviously relevant in this case because the evidence of respondents is to the effect that, although Mrs. Bolton was aware of the approaching Soares' automobile, it was so far away that she did not think, and

a reasonable person would not have thought, it constituted a danger. But the jury was told that if plaintiff was aware of the approaching vehicle, and was negligent, and could have extricated herself, she could not recover. Thus, even though the jury believed that Mrs. Bolton knew that the Soares' car was approaching, but she was oblivious to the fact that it was an impending danger, if the jury also believed it was negligence not to keep a constant lookout, and, had she done so she could have avoided the accident, under the quoted instruction, the jury was told the doctrine of last clear chance was not applicable. This is so although in a prior instruction the jury was properly told that, even though the plaintiff had negligently got herself in a place of danger, the doctrine might apply, the other elements being present, if she was "totally unaware of impending danger." The challenged instruction amounted to telling the jury that, as a matter of law, the plaintiff could not be "totally unaware of impending danger," if she knew that the Soares' car was approaching regardless of how far away it was when such knowledge was secured. The correct and challenged instructions are certainly inconsistent. The challenged instruction did not correctly state the circumstances under which the doctrine would not be applicable. Therefore, it was erroneous. ■ The fact that in other instructions the jury was correctly instructed would not, as a matter of law, cure this error. (*Lopez* v. *Knight*, 121 Cal.App.2d 387 [263 P.2d 452]; *Bellows* v. *City & County of San Francisco*, 106 Cal.App.2d 57 [234 P.2d 729].) ■ The trial court, by granting the motion for a new trial, has decided that the challenged instruction misled or at least confused the jury. In so deciding, there does not appear to have been a "manifest and unmistakable" abuse of discretion. Certainly, the correctness of the trial court's determination is at least "fairly debatable." That being so, the discretion of the trial court cannot be disturbed. This being so, it is not necessary to consider the other respects in which respondents claim the challenged instruction was erroneous.

The order appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied July 23, 1954, and appellants' petition for a hearing by the Supreme Court was denied August 19, 1954.