[S. F. No. 19552. In Bank. Jan. 25, 1957.]

INGA A. BRANDELIUS et al., Appellants, v. CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

Hoberg & Finger and Ingemar Hoberg for Appellants.

Dion R. Holm, City Attorney, and Jerome Cohen, Deputy City Attorney, for Respondents.

SPENCE, J.—Plaintiffs appeal from an order granting defendants' motion for a new trial in an action for alleged wrongful death. The order specifies that the new trial was granted "solely" because the court felt that "the jury was not properly instructed." The propriety of the order therefore depends upon a determination of whether the trial court had correctly instructed the jury. The challenged instructions relate to the following subjects: (1) the degree of care required of a carrier with respect to an alighting passenger; (2) the presumption of due care in relation to the deceased's conduct; and (3) the doctrine of last clear chance.

It is well settled that the granting of a motion for a new trial rests so completely within the discretion of the trial court that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears. (*Mazzotta* v. *Los Angeles Ry. Corp.*, 25 Cal.2d 165, 169 [153 P.2d 338]; *Fennessey* v. *Pacific Gas & Elec. Co.*, 10 Cal.2d 538, 544 [76 P.2d 104].) On appeal all presumptions are in favor of the order granting a new trial (*Abercrombie* v. *Thomsen*, 59 Cal.App.2d 331, 335 [138 P.2d 701]; *Weaver* v. *Shell Oil Co.*, 129 Cal.App. 232, 233 [18 P.2d 736]), and the order will be affirmed if it may be sustained on any ground (*Brown* v. *George Pepperdine Foundation*, 23 Cal.2d 256, 262 [143

P.2d 929] ; *Follett* v. *Brown,* 118 Cal.App. 198, 200 [5 P.2d 51]), although the reviewing court might have ruled differently in the first instance. (*Hall* v. *Desser,* 8 Cal.2d 29, 30 [63 P.2d 809] ; *Whitfield* v. *Debrincat,* 18 Cal.App.2d 730, 733-734 [64 P.2d 960].) In the light of these settled rules, we have concluded that the order granting a new trial in the present case must be affirmed.

The accident occurred about 8 :05 o'clock on the morning of May 6, 1952, at the intersection of Powell and California Streets in San Francisco. The city operates a northerly-southerly cable car line on Powell Street and an easterly-westerly one on California Street. The deceased was struck by a northbound Powell Street cable car after he had alighted from a southbound one. He was on his way to work at the Stanford Court Apartments, which are situated at the southwest corner of the intersection. To take on and discharge passengers, the southbound cable car stops in the southwest part of the intersection with its front in the southern crosswalk across Powell Street. The car has an open front part, with the gripman operating the car from his position in a space between two benches extending along the car's longitudinal axis. The passengers on the front left-hand bench have no access to any other part of the car and must alight to the left between the southbound and northbound tracks. As shown by the scale map in evidence, the distance between these tracks is 5 feet 10 inches; the tracks in each direction are 4 feet wide. A cable car, according to the scale model in evidence, is 8 feet wide, with a wheel distance of 4 feet and an overhang 2 feet wide at each side. The free space between two passing cable cars is therefore 1 foot 10 inches.

The first point to be determined is whether there was error in giving instructions on the degree of care required of a carrier toward an alighting passenger. The court instructed as follows: ''The responsibility imposed by law upon a carrier of passengers for hire, such as the operation of a cable railway, includes the duty to provide a reasonably safe place where the passengers may board or alight from the cable cars.

''If you find from the evidence that the deceased was exercising ordinary care for his own safety and that he had been discharged as a passenger at and was occupying a place designed by defendant City and County as a regular stopping place for the discharge of passengers, then the defendant City and County owed to the deceased the duty to exercise the highest degree of care to avoid injuring him.

"A place to discharge passengers, as used in these instructions, refers to any place at which it is the practice of the carrier to stop for the purpose of discharging passengers. This includes such places immediately adjacent to the track which must be used, or reasonably may be expected to be used, by persons being discharged from the cable cars.

"The relationship of carrier and passenger, and the obligation to exercise the utmost care and diligence to provide safe carriage of passengers, continues until such time as an alighting passenger has reasonable opportunity to reach a place outside of the immediate sphere of activity of the carrier which might reasonably constitute an active hazard to the passengers."

The parties agree that these instructions correctly state the law. However, defendants contend that these principles are not applicable because "the carrier-passenger relationship had terminated as a matter of law when deceased alighted from the cable car and cleared the car from which he alighted." But such conclusion here would too rigidly restrict the carrier-passenger relation and the duty of utmost care which attaches to it.

█ It is true that ordinarily the relation of passenger and carrier terminates when a streetcar passenger alights upon a public street and clears the car from which he alights (*MacLean* v. *City & County of San Francisco*, 127 Cal.App.2d 263, 271 [273 P.2d 698] ; *McAlpine* v. *Los Angeles Ry. Corp.*, 67 Cal.App.2d 486, 489 [154 P.2d 911] ; *Choquette* v. *Key System Transit Co.*, 118 Cal.App. 643, 652-653 [5 P.2d 921]), but there are certain qualifications to be noted according to the circumstances of the case. In *Dayton* v. *Yellow Cab. Co.*, 85 Cal.App.2d 740 [193 P.2d 959], it was said at page 745 that "until the passenger reaches a place outside the sphere of any activity of the carrier which might reasonably constitute a mobile or animated hazard to the passenger, the rule of utmost care and diligence set forth in Civil Code, section 2100, still applies." In *Boa* v. *San Francisco-Oakland T. Rys.*, 182 Cal. 93 [187 P. 2], at pages 100-101, approval is given to the principles that "responsibility continues until the passenger has had a reasonable opportunity of getting away from the car without injury"; that it is for the jury to decide whether or not the carrier allowed its passenger "a reasonable opportunity to leave its car in safety and thus to pass beyond its care"; and that these rules apply to streetcar passengers specifically in cases of accidents "caused by the negligent use

by the railway company of its own instrumentalities.'' (See also *Lagomarsino* v. *Market Street Ry. Co.*, 69 Cal.App.2d 388 [158 P.2d 982].)

Reinhardt, an eye-witness, testified as to the happening of the accident: That he saw the deceased, when 6 feet south of the rear end of the stopped southbound cable car, walking north between the southbound and northbound tracks; that at the same time a northbound Powell Street cable car was approaching with its front in the southern crosswalk across Powell Street and then about 20 feet behind the deceased; that as the latter car drew near, the deceased turned around, throwing up his hands as he faced the oncoming car; and that evidently after being hit, the deceased staggered backwards a few feet and fell to the pavement.

This evidence would support the conclusion that the deceased, sitting on the left front bench of the southbound cable car and after it had stopped, alighted in the only possible way between the tracks; that the narrow space between passing cars—1 foot 10 inches—was not safe for the discharge of passengers if a car from the south should then approach, especially when unnoticed; and that the deceased had not had a reasonable opportunity to get away before being struck. We therefore conclude that the foregoing instructions were properly given, and that the question of whether the carrier-passenger relationship had terminated was properly left to the jury as a question of fact for its determination.

Nor was it improper for the trial court to give an instruction on the presumption of due care on the part of the deceased at the time of the accident. While under some circumstances there is no room for the presumption where the party whose claimed negligence is at issue either himself testifies or introduces evidence in his own behalf as to his acts and conduct immediately preceding and at the time of the accident (*Speck* v. *Sarver*, 20 Cal.2d 585, 587-588 [128 P.2d 16]; *Zollars* v. *Barber*, 140 Cal.App.2d 502, 506 [295 P.2d 561]), the benefit of the presumption is available if such person be deceased and the testimony of plaintiffs' witnesses respecting the deceased's acts and conduct at the time involved is not ''wholly irreconcilable'' with such presumption. (*Gigliotti* v. *Nunes*, 45 Cal.2d 85, 93 [286 P.2d 809].) Our review of the record here leads to the conclusion that the testimony of plaintiffs' witnesses was not wholly irreconcilable with the presumption.

The parties' final dispute is twofold with respect to the

instruction on "last clear chance." Defendants contend that no instruction on that subject should have been given; and that, in any event, the instruction given was erroneous. We shall consider these two contentions in inverse order.

The instruction given, BAJI 205, read as follows:

"There has grown up in our law a certain reasoning process that we sometimes call to our aid in analyzing the facts of an accident case, and which is known as the doctrine of last clear chance. It is permissible to use the doctrine only after we first find, and you may not use it unless and until you first shall have found, that in the events leading up to the accident in question, both the deceased and defendants were negligent.

"The doctrine of last clear chance may be invoked if, and only if, you find from the evidence that these six facts existed:

"First: That deceased, by his own negligence, got himself into a position of danger.

"Second: That thereupon, either it was physically impossible for him, through the exercise of ordinary care, to escape from the danger, or he was totally unaware of impending danger in his position.

"Third: That the defendant had actual knowledge of the perilous situation of the deceased.

"Fourth: That it appeared to the defendant, or would have appeared to him in the exercise of ordinary care, that deceased either was unaware of the danger impending in the situation or was unable to escape therefrom through the exercise of ordinary care.

"Fifth: That after the defendant acquired actual knowledge of the perilous situation of the deceased, he had a clear opportunity to avoid the accident and could have done so by exercising ordinary care.

"Sixth: That the defendant did not avail himself of that opportunity, but by negligent conduct proximately caused the accident.

"If all the conditions just mentioned are found by you to have existed with respect to the accident in question, then you must find against the defense of contributory negligence, because under such conditions, the law holds the defendant liable for any injury suffered by the [deceased] and proximately resulting from the accident, despite the negligence of the [deceased]." While this instruction has appeared in certain recent cases such as *Daniels* v. *City & County of San*

*Francisco,* 40 Cal.2d 614 [255 P.2d 785], and *Peterson* v. *Burkhalter,* 38 Cal.2d 107 [237 P.2d 977], the correctness of the instruction was not there questioned.

Defendants contend that the challenged instruction fails to state correctly the vital time element embraced in the last clear chance doctrine. Their argument is compelling when the instruction is compared with the essential elements of the doctrine as set forth in our decisions. The formula for the application of the last clear chance doctrine was enunciated in *Girdner* v. *Union Oil Co.,* 216 Cal. 197, 202 [13 P.2d 915], and has been reiterated in several recent cases. (*Doran* v. *City & County of San Francisco,* 44 Cal.2d 477, 483 [283 P.2d 1]; *Daniels* v. *City & County of San Francisco, supra,* 40 Cal. 2d 614, 619; *Rodabaugh* v. *Tekus,* 39 Cal.2d 290, 293 [246 P.2d 663]; *Peterson* v. *Burkhalter, supra,* 38 Cal.2d 107, 109-110; *Selinsky* v. *Olsen,* 38 Cal.2d 102, 104 [237 P.2d 645].)

▮ In analyzing the required conditions for the application of the doctrine as set forth in said decisions, it should be noted that the time element is the all important factor. In other words, if the doctrine is to be applied and a recovery is to be permitted despite the contributory negligence of the injured party, there must be substantial evidence to show that the defendant had a last clear chance to avoid the accident by the use of ordinary care following the time that the injured party had lost any similar opportunity to avoid the accident by the use of such care. Under such circumstances, the injured person's contributory negligence does not bar a recovery, for it has been said that "When the doctrine applies, plaintiff's negligence becomes remote rather than proximate in causation. If it does not apply, his negligence remains proximate in its causation and will bar his recovery." (*Girdner* v. *Union Oil Co., supra,* 216 Cal. 197, 204.) ▮ It is therefore essential that the jury be correctly instructed concerning the time for defendant's required exercise of any alleged last clear chance.

The formula, as enunciated in the Girdner case, purports to delineate all the essential elements for the application of the doctrine. It appears, however, that many attempts have since been made to amplify the formula when instructing juries upon the subject. Many of these attempts have resulted in confusion. One of such attempted amplifications is exemplified by the BAJI instruction which was given here. In this connection, it is of interest to note that while said instruction has appeared in the generally excellent and useful

work known as BAJI (California Jury Instructions, Civil), and while the giving of said instruction has gone unchallenged in certain cases, it has been held erroneous by the district courts of appeal on the only two occasions on which its accuracy has been questioned. (*Moreno* v. *Los Angeles Transit Lines* (Cal.App.) 286 P.2d 923; and the present case, *Brandelius* v. *City & County of San Francisco* (Cal.App.) 296 P.2d 415.) Hearings were granted by this court in both the last cited cases for the purpose of giving consideration to the question. It also appears that there are other cases, such as *Mason* v. *Hart,* 140 Cal.App.2d 349 [295 P.2d 28], in which the BAJI instruction has been further modified. In *Mason* v. *Hart, supra,* the trial court attempted to cure the defect in the BAJI instruction by adding the following emphasized language to the fifth subdivision thereof (p. 354):

"Fifth: That after the defendant acquired actual knowledge of plaintiff's perilous situation, *and knew, or in the exercise of reasonable care should have known, that plaintiff could not escape from such a perilous situation,* he had a clear opportunity to avoid the accident and could have done so by exercising ordinary care." Having in mind the apparent difficulty encountered in instructing upon this doctrine, we have re-examined the formula with the view of determining whether there may be need for clarification. Such re-examination, including a reading of the authorities upon which the formula is based, has led us to the conclusion that there is certain loose language in some of the decisions, and that the formula itself might be stated more clearly.

It would serve no useful purpose to explore the origin of the last clear chance doctrine or the theory upon which it is based. ▮ We need only note that "In nearly all jurisdictions the strict rules as to the defense of contributory negligence have been modified by the doctrine of last clear chance. This doctrine, which usually is justified only by vague statements in terms of 'proximate cause,' places its emphasis upon the time sequence of events, and holds the defendant liable if, immediately prior to the harm, he has the superior opportunity to avoid it." (Prosser on Torts, second ed., 1955, p. 290.) This state has followed the majority of the other jurisdictions and has recognized this humanitarian doctrine for many years. The development of the formula prescribing the conditions for its application in this state may be traced through the authorities cited in the Girdner case, and to these

may be added many others which preceded that decision. (*Hoy* v. *Tornich,* 199 Cal. 545 [250 P. 565]; *Wallis* v. *Southern Pacific Co.,* 184 Cal. 662 [195 P. 408, 15 A.L.R. 117]; *Young* v. *Southern Pac. Co.,* 182 Cal. 369 [190 P. 36]; *Basham* v. *Southern Pac. Co.,* 176 Cal. 320 [168 P. 359]; *Arnold* v. *San Francisco-Oakland T. Rys.,* 175 Cal. 1 [164 P. 798]; *Starck* v. *Pacific Electric Ry. Co.,* 172 Cal. 277 [156 P. 51, L.R.A. 1916E 58]; *Thompson* v. *Los Angeles etc. Ry. Co.,* 165 Cal. 748 [134 P. 709]; *Bennichsen* v. *Market Street Ry. Co.* 149 Cal. 18 [84 P. 420]; *Lee* v. *Market Street Ry. Co.,* 135 Cal. 293 [67 P. 765]; *Wahlgren* v. *Market Street Ry. Co.,* 132 Cal. 656 [62 P. 308, 64 P. 993]; *Herbert* v. *Southern Pac. Co.,* 121 Cal. 227 [53 P. 651]; *Everett* v. *Los Angeles etc. Ry. Co.,* 115 Cal. 105 [43 P. 207, 46 P. 889, 34 L.R.A. 350]; *Holmes* v. *South Pac. C. Ry. Co.,* 97 Cal. 161 [31 P. 834]; *Meeks* v. *Southern Pac. Co.,* 56 Cal. 513 [38 Am.Rep. 67]; *Needham* v. *San Francisco & S. J. R. Co.,* 37 Cal. 409.)

▮ The formula, as reiterated in the recent cases in three numbered subdivisions, reads as follows: "(1) That plaintiff has been negligent and, as a result thereof, is in a position of danger from which he cannot escape by the exercise of ordinary care; and this includes not only where it is physically impossible for him to escape, but also in cases where he is totally unaware of his danger and for that reason unable to escape; (2) that defendant has knowledge that the plaintiff is in such a situation, and knows, or in the exercise of ordinary care should know, that plaintiff cannot escape from such situation; and (3) has the last clear chance to avoid the accident by exercising ordinary care, and fails to exercise the same, and the accident results thereby, and plaintiff is injured as the proximate result of such failure." (*Doran* v. *City & County of San Francisco, supra,* 44 Cal.2d 477, 483; *Daniels* v. *City & County of San Francisco, supra,* 40 Cal.2d 614, 619.)

This formula thus uses the term "position of danger" (subd. 1) and requires that "defendant has knowledge that the plaintiff is in such a position" (subd. 2). It further requires that defendant "knows, or in the exercise of ordinary care should know, that plaintiff cannot escape from such situation" (subd. 2). ▮ Therefore the time for the exercise by defendant of any last clear chance, as defined in the formula, commences only at such time as defendant has both (1) actual knowledge of the injured person's "position of danger" and (2) actual or constructive knowledge that the

injured person "cannot escape from such situation." It seems entirely clear that the time when defendant is chargeable with actual knowledge of the injured person's position of danger may substantially precede the time when defendant is chargeable with actual or constructive knowledge of the injured person's inability to escape therefrom; but defendant is not liable under the doctrine unless after the time that he is chargeable with the required knowledge of the injured person's inability to escape, he "has the last clear chance to avoid the accident by exercising ordinary care."

A simple example will illustrate the point under discussion. With a streetcar approaching a busy intersection, the motorman sees a pedestrian standing in the middle of the track at such intersection at a time when the streetcar is a considerable distance therefrom. The motorman then has actual knowledge of the presence of the pedestrian on the track and in a position of danger in the busy intersection. Being a considerable distance from the intersection, however, the motorman may not then have knowledge of any fact which would lead him, or any reasonable man, to believe that the pedestrian "is in a position of danger from which he cannot escape by the exercise of ordinary care." On the contrary, the circumstances might be such that any reasonable man could assume at that point of time that the pedestrian, in the exercise of ordinary care, would no longer be in such position of danger when the streetcar ultimately reaches the intersection. It is only after the later point of time during the approach of the car when the motorman "knows, or in the exercise of ordinary care should know," that the pedestrian "cannot escape from such situation" that the motorman may become liable under the last clear chance doctrine, despite the pedestrian's negligence, for a failure to exercise his last clear chance, if any, "to avoid the accident by exercising ordinary care."

If the formula in its accepted form may be said to lack clarity, we believe it is by reason of the possible doubt concerning the relation between the term "position of danger," in the first subdivision, and the term "such a situation," in the second subdivision. We are convinced, however, that the term "such a situation" was intended to refer solely to the term "position of danger" in the first subdivision, for if it was intended to refer to the entire first subdivision and thereby require actual knowledge of plaintiff's inability to escape,

the second half of the second subdivision, which requires only constructive knowledge of plaintiff's inability to escape, would be surplusage and meaningless. As the authorities require actual knowledge of plaintiff's position of danger (*Darling* v. *Pacific Electric Ry. Co.*, 197 Cal. 702, 708, 711 [242 P. 703]; *Mason* v. *Hart, supra*, 140 Cal.App.2d 349, 355; *Young* v. *Carlson*, 128 Cal.App.2d 743, 747-748 [276 P.2d 23]; *Alberding* v. *Pritchard*, 97 Cal.App.2d 443, 446-447 [217 P.2d 1012]; *Dalley* v. *Williams*, 73 Cal.App.2d 427, 432-434 [166 P.2d 595]; *Gillette* v. *City & County of San Francisco*, 58 Cal. App.2d 434, 442-444 [136 P.2d 611]) and, on the other hand, require only constructive knowledge of plaintiff's inability to escape (*Sills* v. *Los Angeles Transit Lines*, 40 Cal.2d 630, 637 [255 P.2d 795]; *Daniels* v. *City & County of San Francisco, supra*, 40 Cal.2d 614, 619-620; *Peterson* v. *Burkhalter, supra*, 38 Cal.2d 107, 111; *Selinsky* v. *Olsen, supra*, 38 Cal.2d 102, 105; *Basham* v. *Southern Pac. Co., supra*, 176 Cal. 320, 324), there appears to be no doubt concerning the meaning of the formula in this regard.

Our conclusion regarding the nature of the requisite "knowledge" or "discovery" on the part of defendant is fortified by the following statement: "As to what it is necessary for the defendant to discover, there is further disagreement among courts adhering to the prevailing view. Some of them apparently hold that he must in fact realize the plaintiff's danger and his inattention; the greater number apply a more objective standard, and require only that he discover the situation, and that the danger and lack of attention be apparent to a reasonable man." (Prosser on Torts, second ed., 1955, p. 294.) ▮ Thus under the prevailing view elsewhere, as well as under the California cases, actual knowledge of plaintiff's position of danger is required, but constructive knowledge of his inability to escape will suffice.

In the light of these observations, we shall restate the formula in the hope that such restatement may result in greater clarity. In doing so, we shall use the word "plaintiff," as previously used in the accepted formula, rather than "deceased," as used in the challenged instruction. On the other hand, we shall use the past tense, as was done in the challenged instruction, and shall restate the formula in terms as simple as the subject will permit, in order that it may serve as the basis for instructions to juries. The first and last

paragraphs of the challenged instruction will not be repeated here. These paragraphs appear appropriate as instructions to accompany the formula, but we are dealing here only with the formula itself.

▮ The formula may be restated as follows: The doctrine of last clear chance may be invoked if, and only if, the trier of the facts finds from the evidence: (1) that the plaintiff was in a position of danger and, by his own negligence, became unable to escape from such position by the use of ordinary care, either because it became physically impossible for him to escape or because he was totally unaware of the danger; (2) that defendant knew that plaintiff was in a position of danger and further knew, or in the exercise of ordinary care should have known, that plaintiff was unable to escape therefrom; and (3) that thereafter defendant had the last clear chance to avoid the accident by the exercise of ordinary care but failed to exercise such last clear chance, and the accident occurred as a proximate result of such failure.

In restating the formula, it has not been our purpose to add to or detract from the conditions prescribed in the approved formula set forth in the Girdner case and reiterated in our recent decisions. On the contrary, the main purpose has been to state more clearly the vital time element involved in the application of the doctrine. Properly construed, both statements of the formula condition the commencement of the time for the exercise by defendant of any alleged last clear chance upon defendant's actual knowledge of plaintiff's position of danger *and* defendant's further knowledge, actual or constructive, of plaintiff's inability to escape therefrom.

▮ Amplification of the last clear chance formula in instructions to juries is not objectionable if such amplification does not tend to confuse and mislead the jury on the essential elements for the application of the doctrine.

The vice of the challenged instruction in this case rests in the confusing manner in which it amplifies into six subdivisions the last clear chance formula, interchanges the terms "position of danger" and "perilous situation" without any clear indication of whether said terms are or are not intended to be synonymous, and by its fifth subdivision conditions the commencement of the time for the exercise of the last clear chance solely upon defendant's acquisition of "actual knowledge of the perilous situation" of the injured

party. ■ In ordinary usage, the terms "position of danger" and "perilous situation" would appear to be practically synonymous. But if the term "perilous situation," as used in the third and fifth subdivisions, was intended to be synonymous with the term "position of danger" as used in the first subdivision, the instruction is obviously erroneous, as the commencement of the time for the exercise of any last chance would then be conditioned solely upon defendant's actual knowledge of the injured party's "position of danger." It has been suggested that these terms are not synonymous as used in the challenged instruction. It appears, however, from the use of the term "actual knowledge" in relation to the term "perilous situation" in both the third and fifth subdivisions, that the terms "position of danger" and "perilous situation" were intended to be synonymous and would be so understood, as the further requirement of either actual or constructive knowledge on the part of defendant of the injured person's inability to escape is dealt with only in the separate fourth subdivision. At least, there is such ambiguity in the meaning of the instruction that it is misleading and confusing, and it cannot be held to be a correct exposition of the requirement of the last clear chance doctrine.

Whether the giving of this erroneous instruction was prejudicial need not be determined by this court on this appeal from the order granting a new trial. ■ It is true that section 4½ of article VI of our Constitution should control the action of the trial court in considering a motion for a new trial, but when the trial court has determined that the error in the instructions was prejudicial and has therefore granted the motion, the sole issue before the appellate court is whether the trial court has abused its discretion. (*Mazzota* v. *Los Angeles Ry. Corp., supra*, 25 Cal.2d 165, 170-171; *Bolton* v. *Martin*, 126 Cal.App.2d 178, 179-180 [271 P.2d 991] ; *Pope* v. *Wenisch*, 109 Cal.App. 608, 611-612 [293 P. 622].) As was said in *Pope* v. *Wenisch, supra*, at pages 611-612: "There may be some doubt as to whether this error was prejudicial. The trial court evidently believed that it was. In granting a motion for new trial on the ground of erroneous instructions it is proper that a wide discretion should be allowed to the trial court and the order granting the new trial should not be disturbed unless there appears to be an abuse of discretion. (*Thompson* v. *California Const. Co.*, 148 Cal. 35 [82 P. 367] ; *Associated Fruit Co.* v. *Marone*, 68

Cal.App. 358 [229 P. 868]; 20 Cal.Jur. 140.)'' And
as was further said in *Bolton* v. *Martin, supra,* at page 180:
''Thus, on this appeal, the action of the trial court in grant-
ing the motion for a new trial because of the giving of the
challenged instruction can be reversed only if, assuming the
facts warranted instructions on last clear chance at all, the
questioned instruction was absolutely accurate and under no
reasonable interpretation could possibly have misled or con-
fused the jury.''

 As the affirmance of the order here will result in a
new trial, we should declare further that we find no merit
in defendants' final claim that there was no substantial evi-
dence to justify the giving of any instruction on the last
clear chance doctrine. We need only note that conflicting
inferences could be drawn from the testimony concerning the
time that the gripman Mosley ''knew that [deceased] was in
a position of danger and further knew, or in the exercise of
ordinary care should have known, that [deceased] was unable
to escape therefrom.'' The jury was not bound by Mosley's
testimony that the deceased stepped off the southbound cable
car when Mosley's northbound cable car was only 4 feet from
the point of impact. There was other substantial evidence
from which the jury could have inferred that the deceased had
stepped off the car when Mosley's car was a considerable dis-
tance from the point of impact; that Mosley had an un-
obstructed view of the situation for at least 135 feet; that
after alighting, the deceased had walked northerly between
the tracks for approximately 20 or 30 feet before being
struck; and that Mosley had a last clear chance to avoid
the accident by the use of ordinary care, after actually having
seen the deceased in his position of danger and after having
knowledge, actual or constructive, that the deceased could
no longer escape from his position of danger because of his
unawareness of the approach of Mosley's car. Thus the evi-
dence, although conflicting, would have warranted the giving
of a proper instruction on the last clear chance doctrine, as
the jury might have found from the evidence most favorable
to plaintiff that the doctrine was applicable. (*Daniels* v. *City
& County of San Francisco, supra,* 40 Cal.2d 614, 623; *Wright*
v. *Los Angeles Ry. Corp.,* 14 Cal.2d 168, 178-179 [93 P.2d
135].)

In view of our conclusion, however, that the last clear
chance instruction which was given was erroneous and could

have misled and confused the jury, we cannot hold that the trial court here abused its discretion in granting a new trial.

The order granting a new trial is affirmed.

Shenk, J., Traynor, J., Schauer, J., and McComb, J., concurred.

CARTER, J.—I dissent.

Applying a finespun, hairsplitting technical construction to a jury instruction on the last clear chance doctrine is just as destructive of that doctrine as the refusal to submit a case to the jury on the last clear chance theory where the facts warrant such submission (see *Rodabaugh* v. *Tekus*, 39 Cal.2d 290 [246 P.2d 663] ; *Doran* v. *City & County of San Francisco*, 44 Cal.2d 477 [283 P.2d 1]). Although I tried many cases, including *Girdner* v. *Union Oil Co.*, 216 Cal. 197 [13 P.2d 915], involving the last clear chance doctrine, I am more confused, after reading the majority opinion, than ever before as to when the doctrine is applicable. It is my considered opinion that it is too much to expect of a judge or a lawyer, much less a juror, to follow the tortuous mental process resorted to by the majority here in holding that the trial court committed prejudicial error in giving BAJI instruction Number 205 to the jury. As I read that instruction there is clearly no error in its formulation which can justify the granting of defendants' motion for a new trial. The supposed error is that the jury, by meticulous analysis and application of the instruction, could relieve the plaintiff from the effect of the deceased's contributory negligence although the motorman, within the time in which he had a clear chance to avoid the accident, had no knowledge, actual or constructive, of the deceased's inability to escape from his position of danger. This interpretation can be drawn only by ignoring the effect of the instruction in its entirety. The reasoning of the majority appears to be that because the Fifth subdivision states: ''That after the defendant acquired actual knowledge of the perilous situation of the deceased, he had a clear opportunity to avoid the accident and could have done so by exercising ordinary care,'' it follows that there is no requirement that defendant knew, or should have known, that it was impossible for the deceased to escape from the danger. The flaw in this reasoning is that it completely ignores the Fourth subdivision which requires the jury to find: ''That it appeared to the defendant, or would have appeared to him in the exer-

cise of ordinary care, that deceased either was unaware of the danger impending in the situation or was unable to escape therefrom through the exercise of ordinary care." If this requirement is to have any meaning at all it can only be that the deceased's inability to escape must become apparent to the defendant, actually or constructively, while the defendant still has an opportunity to avoid the accident. Any other interpretation renders the Fourth subdivision totally meaningless and it is unreasonable to conclude that a jury would so interpret and apply the instruction.

While it cannot be disputed that the trial court is vested with a wide discretion in granting a new trial on the ground of erroneous instructions, it is equally established that where the instructions are correct, the granting of a new trial is an abuse of discretion. (*Conner* v. *Southern Pac. Co.*, 38 Cal.2d 633 [241 P.2d 535] ; *Parker* v. *Womack*, 37 Cal.2d 116 [230 P.2d 823].) Furthermore, as the court said in *Mayfield* v. *Fidelity & Casualty Co.*, 16 Cal.App.2d 611, 629-630 [61 P.2d 83], "It is fundamental that, in examining instructions, a part of one instruction may not be separated from its context and made the object of special criticism if the instructions taken in their entirety correctly advised the jury as to the law." It must be borne in mind that the trial court, in considering the propriety of a motion for a new trial, is guided by section 4½ of article VI of the state Constitution which provides, in part, that: "No judgment shall be set aside, *or new trial granted,* in any case, *on the ground of misdirection of the jury* . . . unless, after an examination of the entire case, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Emphasis added.) Accordingly, even though there be error in the charge to the jury, the granting of a new trial is not justified thereby unless the error is prejudicial. (*Sparks* v. *Redinger*, 44 Cal.2d 121, 123 [279 P.2d 971] ; *Brown* v. *George Pepperdine Foundation*, 23 Cal. 2d 256, 262 [143 P.2d 929] ; *Nance* v. *Fresno City Lines, Inc.*, 44 Cal.App.2d 868, 872 [113 P.2d 244].)

An examination of the case law reveals that error of a much more substantial nature than that which might be found in BAJI 205 is required to justify the ordering of a new trial. In *Eames* v. *Haver*, 111 Cal. 401 [43 P. 1120], an instruction which was admittedly obscure in its wording was held not to be prejudicially erroneous and, accordingly, the court reversed an order granting a motion for a new trial. In *Moran*

v. *Abbey,* 63 Cal. 56, on an appeal from an order granting a new trial, it was urged that the charge to the jury was erroneous. This court said, at page 62, that: "Considered as a whole, in connection with the evidence and the pleadings, and construed with reference to the subject-matters in controversy, and the claims of parties before the court, it [the charge] was substantially correct. It fairly presented the case to the jury, and there was nothing in it calculated to mislead the jury. There were therefore no grounds for a new trial." In *Popejoy* v. *Hannon,* 37 Cal.2d 159, 168 [231 P.2d 484], we said that: "Prejudicial error does not necessarily result from the giving of an instruction which, subjected to meticulous analysis, might be given a 'possible construction' making it subject to 'criticism.' " In *Sparks* v. *Redinger, supra,* 44 Cal. 2d 121, 123, Mr. Justice Spence, there, as here, speaking for the majority, observed that ". . . the trial court, no less than the appellate court, is expressly enjoined by article VI, section 4½, of our Constitution from granting a new trial for error of law unless such error is prejudicial. If it clearly appears that the error could not have affected the result of the trial, the court is bound to deny the motion." In the Sparks case the majority of this court held that the failure of the trial court to give the plaintiffs' requested instructions on last clear chance in an accident case was *not* prejudicial error which would support the lower court's granting of plaintiffs' motion for a new trial.

In the cases which have affirmed the granting of a new trial on the ground of erroneous instructions there were obvious errors which were clearly prejudicial to the moving party. The three cases cited in the majority opinion are exemplary. In *Mazzotta* v. *Los Angeles Ry. Corp.,* 25 Cal.2d 165 [153 P.2d 338], the instructions omitted the element of proximate cause as a requisite to the defendant's liability. In *Bolton* v. *Martin,* 126 Cal.App.2d 178 [271 P.2d 991], an instruction given on last clear chance failed to distinguish between the plaintiff's awareness of danger and her awareness of an approaching automobile regardless of its proximity at the time. In *Pope* v. *Wenisch,* 109 Cal.App. 608 [293 P. 622], the instructions failed to state that in order to relieve defendant from liability, plaintiff's contributory negligence must be the proximate cause of the injury. In each of these cases there were patent omissions of instructions on material issues and the trial court, accordingly, was held to be within the bounds of its discretion in ordering a new trial. Here, rather than

an obvious omission or material misdirection, there is, at most, a theoretical and speculative uncertainty in construction. That it could have no prejudicial effect is forcefully demonstrated by the fact that the instruction has appeared, and been employed without objection, in its present form for more than 13 years, during which time it has been subjected to the scrutiny of innumerable trial and appellate judges and attorneys. In *Daniels* v. *City & County of San Francisco,* 40 Cal. 2d 614 [255 P.2d 785], we held that it was error to refuse to give BAJI 205 and said, at page 617, that: "The form of the instruction is not in question." (See also *Cole* v. *Ridings,* 95 Cal.App.2d 136 [212 P.2d 597]; *Mangler* v. *Pacific Electric Ry. Co.,* 71 Cal.App.2d 815 [163 P.2d 774].) The record in this case shows that the alleged error was not urged by counsel for defendants nor considered by the trial judge on the motion for new trial. Having thus escaped detection, it seems manifest that any error in the instruction is absolutely without consequence.

For this reason, I would reverse the order granting a new trial.